SECOND DISTRICT COURT OF THE CITY OF PATERSON.

THE OCEAN ACCIDENT AND GUARANTEE CORPORATION, LIMITED, PLAINTIFF, v. PEERLESS CLEANING AND DYEING WORKS, INCORPORATED, DEFENDANT.

Decided October 11, 1932.

For the plaintiff, *Kalisch & Kalisch*.

For the defendant, *Cohn & Kohlreiter*.

ROSENSTEIN, J. This is an action brought by the plaintiff to recover from the defendant the sum paid by the plaintiff to one Eileen Smith in settlement of a claim made by her for damages alleged to have been caused by the defendant in an accident. On October 26th, 1930, plaintiff issued a motor vehicle policy to the defendant, by the terms of which plaintiff agreed to pay any sums of money for the payment of which defendant might become liable during the term of the policy for bodily injuries sustained by any person or damage to property caused by any of the motor vehicles of defendant. Plaintiff likewise agreed to investigate any claims for such damages, to negotiate settlement thereon, and to defend suits for damages. The policy contained a provision that upon the occurrence of an accident, involving bodily injuries or damage to property of others, and also upon receiving notice of any claim made or suit resulting therefrom, the assured was to give prompt notice to the insurance company.

On August 3d, 1931, one of the trucks of the assured came into contact with Eileen Smith. The undisputed testimony was, that in answer to the driver's inquiry she replied she

had not been injured, and that she let him treat her to an ice cream soda. On that day she notified the defendant company by letter of the occurrence of the accident and stated that her shoes had been ruined, and that she would take either $10 in settlement thereof, or let the assured buy her a new pair which would cost $15.

There is a disputed question of fact as to when the assured gave notice of the accident to the company. The plaintiff says it got its first notice of the accident on November 25th, 1931, when it was notified thereof by the attorney of Miss Smith. Defendant says that, upon receiving the letter of August 3d, 1931, it notified the office of the agent of the insurance company and advised him of the receipt of this letter from Miss Smith, and that when it received the letter of October 29th, 1931, from the attorney representing Miss Smith, it again gave immediate notice to the agent of the insurance company. Neither of these notices was in writing. There is no dispute of the fact that on February 4th, 1932, the insurance company notified the defendant that, through investigation, it had learned that Miss Smith had received an injury to her foot and they could dispose of her claim for $250, although she originally would have taken $15 in settlement, and notifying the defendant that they must look to it for settlement of the case, and that if this was not accomplished within five days they would dispose of the matter themselves and seek reimbursement from the defendant. At the end of the five-day period, they did pay Miss Smith $250 and now seek to be reimbursed by the defendant.

In the absence of the Financial Responsibility act (*Pamph. L.* 1929, *ch.* 116, *p.* 201), this action would not lie. At common law there was no privity between the claimant and the insurance company. Hence, the claimant could not sue the company, but could sue only the assured, who, in turn, would have an action against the company. And, in that case the insurance company would have a defense, because the policy requires that prompt notice of an accident be given by the assured to the insurance company. If, nevertheless, the insurance company did choose to pay the claimant, when it knew that the assured had breached the provision as to prompt no-

tice, such payment would be a voluntary payment, and a waiver of the breach of the covenants in the policy on the part of the assured. Therefore, it could not now seek reimbursement for such payment.

Can the company, nevertheless, now seek such reimbursement by virtue of the statute? In their brief, counsel for the plaintiff frankly concede, "it is clear that in the absence of the Financial Responsibility act * * * the insurance company would have been relieved from all obligations under the contract to both the assured and the third party." But counsel for the plaintiff insist that this statute gives a third party an absolute right to sue the company, and that the company's defense, to wit, want of prompt notice, available if the assured were suing, is not available against such third person, and, therefore, their payment to such third person was not voluntary, and permits them, under the terms of the statute, to be reimbursed by the assured.

Plaintiff overlooks a very material fact. The Financial Responsibility act does not apply to every policy of automobile insurance issued in the State of New Jersey. It does not say that the liability of the insurance company shall be absolute and in favor of every claimant injured by the assured under any policy of liability insurance. The provision for making liability absolute towards a third person is contained in subdivision (a) of paragraph 10 at page 201: "The liability of any company under a motor vehicle liability shall become absolute whenever loss or damage covered by said policy occurs," &c.

Standing by itself, this language would be sufficiently broad to make the insurer absolutely liable on every policy to every injured claimant. But this language does not stand alone. It is expressly made a provision affecting only certain policies, for the last paragraph of section 10, page 201, which introduces it, reads, "*such motor vehicle liability policy* shall be subject to the following provisions which need not be contained therein," and then immediately follows the provision for absolute liability just quoted. The expression, "such motor vehicle liability policy" providing for absolute liability clearly refers to some particular class of policy mentioned

earlier in the statute. And that policy is the policy required in certain specific cases under this statute. What are these cases?

The act commences, section 1, page 195, by stating that the commissioner of motor vehicles shall require proof of financial responsibility to satisfy any claim for damages, in the cases of certain persons: (1) those convicted; (2) those who forfeited their bonds, and (3) those whose cases were nolled for certain statutory offenses, or (4) those already in a motor vehicle accident causing damages of $100 or more. This proof of financial responsibility may be furnished in various forms. One of these (page 196), is a certificate signed by the agent of any company issuing the policy of insurance. This is the first mention of policy of insurance, and it is "such policy of insurance" that "shall be subject to the following provisions," one of which is the absolute liability of the company towards a third person.

Hence, it is only a policy used as proof of financial responsibility in the case of one of the four classes of individuals mentioned in the first section of the act that would create absolute liability towards the injured third person. Consequently, in the case at bar, if the injured party had sued the insurer, she could have had the benefit of the absolute statutory liability in her favor, only, if she had proved, and this would be an absolute essential of her case, that the assured was one of the four classes of individuals in whose case the statute created absolute liability. Likewise, in the case at bar, it was essential for the insurance company to show that its assured was in one of those four classes, since it is only as to such persons that proof of the existence of such insurance policies is required by the statute, and only as to such policy does the statute raise an absolute liability of the company to the third person, and, in turn, give the company a right of action against the assured for reimbursement, if he has breached any of the terms of the policy, such as failure to give prompt notice to the company.

Nor does the endorsement on the policy extend the liability of the company to an absolute one in favor of any third person, since it merely incorporates by reference and quotation

the provisions of the statute. A memorandum on the endorsement discloses that the endorsement is placed on every New Jersey policy, obviously a precaution that it shall be there, with its provision of reimbursement in favor of the company, in any case where the statute would apply to it. That the company foresaw that, at the time of issuance of the policy, the statute might not apply to the policy, but that subsequently the insured might come within one of the four classes and would want the policy to comply with the statute in order to retain his license, is shown by paragraph (d) of the rider, "the company agrees to provide an appropriate certificate for filing with the commissioner of motor vehicles as required by section 2 of said chapter whenever it may be required," &c. It is to be borne in mind that it is only upon a policy of which, and when, such certificate is filed that the statute imposes an absolute liability in favor of a third person against the company.

The endorsement itself provides, "the policy to which this endorsement is attached is amended to conform with the requirements of chapter 116, laws of 1929 of the State of New Jersey, and all laws amendatory thereof or supplementary thereto which may be or become effective while said policy is in force, as respects any liability for bodily injury or death or liability for property damage covered by said policy, *but only to the extent of the coverage and the limits of liability required by said chapter* and only with respect to the motor vehicles described in said policy.

*"It is further agreed that to the extent of the coverage required by said chapter and within the limits stated in said chapter,* the said policy is subject to the following additional provisions contained in said chapter."

In the case at bar, there was no proof that the assured was within any of the four classes mentioned in the first section, as to whom such certificate was required as proof of financial responsibility. Hence, there was no absolute liability in favor of the third person against the company, which, in turn, has no right of reimbursement against the assured.

The judgment is no cause of action.