## STATE COMPENSATION INSURANCE FUND et al. v. BANKERS INDEMNITY INSURANCE CO.
### No. 9074.

Circuit Court of Appeals, Ninth Circuit.
Aug. 11, 1939.

Rehearing Denied Sept. 22, 1939.

C. S. Bucher, Keith & Creede, Gordon S. Keith, Frank J. Creede, and Percy J. Creede, all of San Francisco, Cal., for appellants.

Charles B. Morris and Leo J. McEnerney, both of San Francisco, Cal. (J. Bruce Fratis and Julius M. Keller, both of San Francisco, Cal., of counsel), for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

On the 25th day of February, 1933, John J. Dalton entered into an oral agreement with the County of Alameda, State of California, whereby he was to furnish an automobile truck with a driver and do work on Grizzly Peak Road No. 1. This work was to consist in hauling dirt back and forth to and from certain locations on the job. In addition to the truck with driver, Dalton was to furnish gas and oil and exhibit a policy providing for

public liability insurance. Dalton was to be paid $1.50 per hour for 7 hours per day, half an hour of this time was allowed for going from the camp to the place where the work was to be done and taking with him about 20 men, and half an hour for bringing them back to the camp at night. He was to report to and work under the direction of Superintendent Pixley in charge of the work for the County.

On the Sunday evening before February 27, 1933, Dalton drove his truck to the camp from which he was to begin work the next day. On the following Monday morning Dalton reported to Pixley, who instructed him to pick up some men and take them up to Grizzly Peak Road. He further directed Dalton that after arrival at the place of work he was to put in his time hauling dirt. Dalton followed these instructions and was engaged in hauling dirt back and forth until about 3:30 in the afternoon when the foreman under Pixley directed him to bring the men he had taken up in the morning back down to the camp. He obeyed these instructions and was returning with these workingmen to the lower camp when he lost control of the truck which resulted in the deaths of Jesse Bradley and John Adam Corrick and in personal injuries to Leonard Clark, Frank Haberkam, Ernest Burbank, Dudley de Leon, D. A. Barek, H. Coneff, Howard Cason, John Maillet and Claude de Vold. Each of said persons were being transported by said Dalton in his automobile truck under and pursuant to the agreement entered into between him and the County of Alameda.

The State Compensation Insurance Fund insured the County of Alameda for its liability under the Workmen's Compensation Laws and as a result of the injuries and deaths it paid death benefits to the widows of Bradley and of Corrick (the amount of the Bradley benefit, the only one appearing in the pleadings herein, being $1,150) and paid certain sums to and for Clark, and an additional sum of $404.97 to and for the other injured men.

Thereafter, the State Compensation Insurance Fund commenced an action in the Superior Court of the State of California, County of Alameda, against John Dalton in behalf of itself and in behalf of the widow and minor child of Jesse Bradley for the damages arising from the death of Bradley. A trial of this action resulted in a judgment in favor of the plaintiff and against Dalton in the sum of $7,500 (under Section 26, Workmen's Compensation Act of the State of California, Stat. of Calif. 1917, Chapter 586 as amended, any amount collected by said plaintiff in excess of the expenditures would be paid to Mrs. Bradley and her child). This judgment was sustained on appeal to the District Court of Appeal of the State of California (see State Compensation Insurance Fund v. Dalton, 13 Cal.App.2d 284, 56 P.2d 962) and the Supreme Court of the State of California denied rehearing.

Thereafter a trial in an action brought by Mrs. Corrick resulted in a judgment in her favor and against Dalton in the sum of $6,000; Leonard Clark recovered judgment in his action against Dalton in the sum of $4,000; and State Compensation Insurance Fund recovered a separate judgment against Dalton in the sum of $404.-97 in its action for its expenditures to and for the several men who received minor injuries.

Executions were issued on each of these judgments which later were returned unsatisfied; thereupon the actions here involved were commenced.

State Compensation Insurance Fund first filed its action in the Superior Court of the State of California against appellee, Bankers Indemnity Insurance Company, alleging that the latter had issued an insurance policy to John J. Dalton, which policy required appellee to satisfy any judgment recovered against Dalton for liability arising out of damages caused by himself and his truck on February 27, 1933. Later, similar actions were commenced on the other judgments recovered by appellants. All of these actions were removed by appellee to the District Court of the United States for the Northern District of California, Southern Division. Thereafter, appellee filed an amended answer and cross-complaint for declaratory relief. All the actions were in effect consolidated.

The following are pertinent provisions of the liability insurance policy involved on this appeal:

"Bankers Indemnity Insurance Company * * * In Consideration of the Premium Hereinafter Provided and of the Declarations Forming a Part Hereof Does Hereby Agree with the Assured subject to the Exclusions herein and the Conditions printed on the second page of this policy:

"(1) To Pay on behalf of the Assured All Sums (within the limits as expressed in the Declarations) which the Assured shall become obligated to pay by reason of the liability imposed by law upon the Assured for damages, including consequential damage resulting from loss of services and expenses, arising out of bodily injuries, and/or death resulting therefrom, accidentally suffered, or alleged to have been suffered, by any person or persons, by reason of the ownership, maintenance and/or use of any of the automobiles described in said Declarations (including carrying of goods thereon and the loading and unloading thereof);

*    *    *    *    *    *

"Exclusions

"The Company shall not be liable under this Policy for * * * claims arising from the use of any automobile for purposes other than those specified in the Declarations.

*    *    *    *    *    *

"Basis of Premium

"A. The premium is based upon the number and character of the automobiles and the uses to which same are to be put as described in the Declarations herein.

*    *    *    *    *    *

"Declarations

"1. Name of Assured: John J. Dalton.

*    *    *    *    *    *

"4. The business of the Assured is Hauling dirt for City of Oakland.

*    *    *    *    *    *

"9. The purposes for which the described automobiles are and will be used are: Commercial use.

*    *    *    *    *    *

"(b) The term 'Commercial' when used is defined as usual to the business of the named Assured as described above including loading and unloading of goods.

"10. None of the insured automobiles are or will be rented to others, except as follows: No Exceptions.

"11. None of the insured automobiles are or will be used to carry passengers for a consideration, actual or implied, except as follows: No Exceptions."

In addition to the foregoing provisions contained in the general policy, there is annexed to the policy an endorsement which provides for the amendment of the policy to conform with the requirements of Chapter 259, California Laws of 1929, and laws supplementary thereto. An excerpt from said endorsement reads as follows:

"California Financial Responsibility
Act Endorsement

"The Policy to which this endorsement is attached is amended to conform with the requirements of Chapter 259, California Laws of 1929, and all laws amendatory thereof or supplementary thereto which may be or become effective while this Policy is in force, as respects any liability for bodily injury or death or liability for property damage covered by this Policy, but only to the extent of the coverage and the limits of liability required by said Chapter and only with respect to the motor vehicles disclosed in the Policy.

"It is further agreed that to the extent of the coverage required by said Chapter and within the limits stated in said Chapter, this Policy is subject to the following additional provisions:

"(a) The Liability of the Company under this Policy shall become absolute whenever loss or damage covered by the Policy occurs, and the satisfaction by the Assured of a final judgment for such loss or damage shall not be a condition precedent to the right or duty of the Company to make payment on account of such loss or damage. Upon the recovery of a final judgment against the Assured for any such loss or damage the judgment creditor shall be entitled to have the insurance provided by this endorsement applied to the satisfaction of the judgment.

*    *    *    *    *    *

"(c) It is further provided that the Assured or any other person covered by the Policy shall reimburse the Company for payments made on account of any accident, claim or suit involving a breach of the terms, provisions or conditions of the Policy, which payments the Company would not have been obligated to make under the provisions of the Policy independently of this endorsement or of the provisions of said Chapter."

Upon stipulation the cause was tried by the court sitting without a jury. At the conclusion of the evidence appellants made a motion for judgment and also requested special findings of fact and declarations and conclusions of law. The court found for appellee and made findings of fact and conclusions of law and judgment thereon was entered in favor of appellee

and against all appellants. From this judgment comes this appeal.

The questions presented concern no factual conflict, but involve the legal effect of the evidence and the proper construction of the terms of the contract of insurance and of certain statutes of the State of California as related to the provisions of the policy.

Pertinent provisions of the California Vehicle Act in effect at the time of this accident are: Sec. 73(g); Sec. 73½; Sec. 36½; Sec. 36¾.[1]

■ Appellants insist that under California Statutes of 1929, p. 563, Chapter 259, supra, and particularly by reason of the "California Financial Responsibility Act Endorsement," quoted above, which was attached to this policy, appellee was obligated to discharge these judgments even if Dalton had not conformed with some of the terms of the policy.

[1] By Chapter 258 of the California Statutes of 1929, pp. 558, 560, Sec. 73 was amended to read as follows:

"Sec. 73 * * * (g) The operator's or chauffeur's license and all of the registration certificates, of any person, in the event of his failure to satisfy every judgment within fifteen days from the time it shall have become final, rendered against him by a court of competent jurisdiction in this or any other state, or in a district court of the United States, for damages on account of personal injury, or damages to property in excess of one hundred dollars, resulting from the ownership or operation of a motor vehicle by him, his agent, or any other person with the express or implied consent of the owner, shall be forthwith suspended by the chief of the division of motor vehicles, upon receiving a certified copy of such final judgment or judgments from the court in which the same are rendered and shall remain so suspended and shall not be renewed nor shall any other motor vehicle be thereafter registered in his name while any such judgment remains unsatisfied and subsisting, and until the said person gives proof of his ability to respond in damages, as defined in section 36½ of this act, for future accidents. * * * *"

By Chapter 259 of the California Statutes of 1929, p. 563, passed, approved and in effect on the same date, a new section was added to the California Vehicle Act as follows:

"Sec. 36½. *Proof of ability to respond in damages.* Proof of ability to respond in damages when required by this act, shall mean proof of ability to respond in damages, resulting from the ownership, or operation, of a motor vehicle, and arising by reason of personal injury to, or death of, any one person, of at least five thousand dollars, and, subject to the limit of five thousand dollars for each person injured or killed, of at least ten thousand dollars for such injury to, or the death of, two or more persons in any one accident, and for damage to property (in excess of one hundred dollars) of at least one thousand dollars resulting from any one accident. Such proof of ability to respond in damages may be given, either, by

"(1) The written certificate or certificates of any insurance carrier duly authorized to do business within the state, that it has issued to or for the benefit of the person named therein a motor vehicle liability policy or policies as defined in section 36¾ of this act, which, at the date of said certificate or certificates is in full force and effect, and * * *

"(2) The bond of a surety company duly authorized to do business within the state, or a bond of individual sureties * * *

"(3) Evidence presented to the chief of the division of motor vehicles of a deposit by such person with the state treasurer of a sum of money, the amount of which money shall be eleven thousand dollars; * * *."

And in the same Act an additional new section was added as follows:

"Sec. 36¾. 'Motor vehicle liability policy,' as used in this act, shall be taken to mean a policy of liability insurance issued, by an insurance carrier authorized to transact business in this state, to the person therein named as insured, which policy shall designate, by explicit description or by appropriate reference, all motor vehicles with respect to which coverage is intended to be granted by said policy, and shall insure the insured named therein, and any other person using or responsible for the use of any such motor vehicle, with the consent, express or implied, of such insured, against loss from the liability imposed upon such insured by law or upon such other person for injury to, or death of, any person, other than such person or persons as may be covered, as respects such injury or death by any workmen's compensation law, or damage to property, except property of others in charge of the insured or the insured's employees growing out of the maintenance, use or operation of any such motor vehicle in the United States of America; or which policy shall, in the alternative, * * *."

By Chapter 1026, of California Stat-

It appears that the language of the endorsement on the policy limits the liability for injury or death "to the extent of the coverage required by said chapter and within the limits stated in said chapter," but said statute referred to, in effect at the time the policy was issued and the accident occurred, *did not require* any such general policy of indemnity to be carried by all operators of motor vehicles. The requirement was absolute only if an owner or operator sought to avoid cancellation or suspension of his ownership or operator's license after a judgment against him for personal injuries occasioned through the operation of a motor vehicle remained unsatisfied for a period of time, or when he had been convicted of an offense under Sections 112 or 141 of the Vehicle Act St.1929, pp. 537, 545.

Upon this point the District Court found: "That at the time of the issuance of said policy, and throughout the term thereof, said John J. Dalton had not done, or omitted to do any act or become responsible for any act or omission, as a result of which compliance in any respect was required by John J. Dalton with the provisions of Chapter 259 of the California Statutes of 1929, or any laws or statutes supplementary thereto or amendatory thereof effective during the term of said policy, and that the obligations expressed in said policy were not extended, modified or enlarged by reason of the annexation or existence of said endorsement at any time during the term of said policy."

As the language of the endorsement seeks to limit the coverage to cases where indemnity is required by the statute we cannot say the District Court was wrong in its holding, particularly where the courts of California have not construed this statute and where the opinion of the court is in harmony with decisions from other states. Rasinski v. Metropolitan Casualty Ins. Co., 117 N.J.L. 490, 189 A. 373; American Lumbermen's Mut. Casualty Co. v. Trask, 238 App.Div. 668, 266 N.Y.S. 1.

Appellants also cite California Statutes of 1919, p. 776, Chapter 367,[2] and maintain that in Ocean Accident & Guarantee Corporation v. Torres, 9 Cir., 91 F.2d 464, this court there decided that the case of Malmgren v. Southwestern Automobile Ins. Co., 201 Cal. 29, 255 P. 512, was authority for holding that an

---

utes of 1931, pp. 2099, 2110, an additional new section was added to the California Vehicle Act, which reads as follows:

"Sec. 73½. *Showing of financial responsibility required following conviction for certain offenses.*

"(a) Whenever any person shall be convicted upon a charge of violation of any of the provisions of sections 112 or 141 of the California vehicle act, and time for an appeal shall have elapsed without an appeal having been taken, or after any said appeal has been taken and judgment of conviction affirmed, the clerk of the court in which said judgment was rendered, shall immediately report the facts to the division of motor vehicles, and the division of motor vehicles shall thereupon suspend the operator's or chauffeur's license of the person so convicted, and such suspension shall remain in effect unless and until the person so convicted and whose license is suspended shall give proof of financial responsibility in accordance with the provisions of sections 36½ and 36¾ of the California vehicle act."

2 "Section 1. No policy of insurance against loss or damage resulting from accident to or injury suffered by another person and for which the person insured is liable other than a policy of insurance under the workmen's compensation, insurance and safety act of 1917 or any subsequent act on the same subject, or, against loss or damage to property caused by horses or other draught animals or any vehicle, and for which loss or damage the person insured is liable, shall be issued or delivered to any person in this state by any domestic or foreign insurance company, authorized to do business in this state, unless there shall be contained within such policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of such policy and stating that in case judgment shall be secured against the insured in an action brought by the injured person or his heirs or personal representatives, in case death resulted from the accident, then an action may be brought against the company, on the policy and subject to its terms and limitations, by such injured person, his heirs or personal representatives as the case may be, to recover on said judgment. Upon any proceeding supplementary to execution, the judgment debtor may be required to exhibit any policy carried by him insuring against the loss or damage for which judgment shall have been obtained."

injured third party who was given the right to sue on a policy of insurance by said Act could not be circumvented or defeated by any provision which the insurer may have elected to place in the contract of insurance in derogation of or in conflict with the statute; and it is argued that the limitation contained in the policy, that there could be no recovery for an injured person carried for a consideration, actual or implied, was abrogated by said Act.

Since the decision in the Torres case, the Supreme Court of California in Western Machinery Co. v. Bankers Indemnity Ins. Co., 10 Cal.2d 488, 75 P.2d 609, 611, held that "In the absence of any law declaring the obligation of the insurer in that respect, the conclusion is compelling that the injured person is bound by the limitations contained in the policy." The decision also stated that upon the point discussed here, the Malmgren decision had been repudiated by the later case of Hynding v. Home Acc. Ins. Co., 214 Cal. 743, 7 P.2d 999, 85 A.L.R. 13. Upon this question then we must conclude that according to California law, as presently interpreted by its highest court, the injured person is bound by the limitations contained in the policy.

We next examine three specifications of error separately stated by appellants whereby it is asserted that at the time of the accident the truck (a) was being used by the assured in a commercial use, usual to the business of assured of hauling dirt including the loading and unloading thereof; (b) was not being used in carrying passengers for a consideration within the meaning of the terms of the policy; and (c) was being used by the assured and not being rented to others. These contentions the trial court directly or impliedly determined contrary to the claims of appellants.

Appellee argues that the trial court's findings on these matters being based upon some evidence are binding on this court. However, it is to be noted that upon the argument and in the briefs, all parties agreed that there being no conflict in the evidence there is no factual dispute and that therefore the questions presented involved only a determination of the law as applied to the facts.

There is considerable discussion in the briefs as to whether or not under the contract between the County of Alameda and Dalton the latter was acting as a servant of the County or as an independent contractor and also as to whether or not the truck involved was rented to the County. However, ultimately, both sides seem to have reached the conclusion that the truck was not rented, which eliminates that question from any further discussion, nor does it seem necessary to decide what Dalton's relationship to the County was. All parties are in agreement that by the contract Dalton was to furnish the truck, driver, gas, oil and liability insurance and work in connection with road construction on the Grizzly Peak Road; that he was to take instructions from Superintendent Pixley; that he was to be paid $1.50 per hour for 7 hours each day, Dalton to work approximately six hours a day hauling on the road project, the additional hour to be utilized in transporting a group of workers, who were also working on the project, from the camp to the construction job in the morning and to return them in the evening. The pertinent questions to be decided then are: (1) Were the workmen so transported passengers for a consideration; and (2) was such use of the truck contemplated within the terms of the policy.

The policy of insurance contains the following restriction: "None of the insured automobiles are or will be used to carry passengers for a consideration, actual or implied, except as follows: No Exceptions." There has been much discussion concerning the interpretation to be placed on this declaration. Appellants argue that the transportation of the workers was incidental to the business at hand and was permissible under the policy and the workers were not passengers, and in support of their position cite the case of Jasion v. Preferred Acc. Ins. Co., 113 N.J.L. 108, 172 A. 367.

The policy states that the business of the insured is that of hauling dirt. At the time the policy was issued Dalton was employed for that purpose by the City of Oakland. At that time it was not part of his employment to transport men to or from work. In fact, as he testified, it never had been part of his duties to carry workmen in connection with his employment at any time except on this road work where the accident occurred. So far as the transportation of workmen in his truck having been usual or incidental to Dalton's business at, or prior to, the time of the issuance of the policy, the evidence

is to the contrary and the finding of the trial court in this regard must be sustained.

The evidence further shows that it was part of Dalton's contract with the County that for a portion of his time each day his truck was to be used by him to transport the road workers to and from the place of work and he was to receive compensation for this service at the same rate of pay as for his work in hauling dirt.

On these facts the trial court held that at the time of the accident the truck was being used to transport passengers for a consideration contrary to the meaning of the terms of the policy. We cannot say that this determination was erroneous.

There was a sufficiently definite pecuniary benefit to be derived by Dalton from the transportation of these workers. It was part of his legal obligations for which he received compensation and the transaction was within the inhibition of the policy.

In the case of Western Machinery Co. v. Bankers Indemnity Ins. Co., 10 Cal.2d 488, 75 P.2d 609, the court held that a possibility of a future purchase of goods did not constitute consideration as contemplated by the insurance policy, and while it cited the case of Neilson v. American Mutual Liability Ins. Co., 111 N.J.L. 345, 168 A. 436, the court did not positively state a rule as to what would constitute consideration, nor has it done so in any case that has been brought to our attention.

However, the trend of the courts of California may be indicated by certain language used in Haney v. Takakura, 2 Cal. App.2d 1, 37 P.2d 170, where in an action for damages for personal injuries the question involved was whether plaintiff, who had accompanied defendant in his car to assist in marketing defendant's oranges, was a guest or was paying compensation for the ride by conferring a "definite benefit" upon the owner of the car. In the course of the opinion, 2 Cal.App.2d on page 5, 37 P.2d on page 172, occurs this significant paragraph: "A somewhat similar question was before the court in the case of Sullivan v. Richardson (defendant) and McCord et al. (appellants), 119 Cal. App. 367, 6 P.2d 567, 569. The plaintiff in that case was a prospective purchaser of real estate; was taken for a ride in an automobile for the purpose of viewing the property being offered for sale by the defendant. It was contended by the appellant McCord that he was entitled, as a matter of law, from the evidence, to the finding that the plaintiff was a guest. The court found that the appellant was a passenger. The opinion of the court is as follows: 'Under the law, she could not be held to occupy both relationships of "guest" and "passenger" at the same time and under the same circumstances. To be a passenger does not necessarily imply that there should be payment in money for transportation. Champagne v. A. Hamburger & Sons, 169 Cal. 683, 692, 147 P. 954. It may be by contract, either express or implied, and the contract need not be between the carrier and passenger, but may be between the carrier and a third person for the passenger. Orr & Lanning v. Boockholdt, 10 Ala.App. 331, 65 So. 430, 431. "It is enough that there is any consideration for the carriage. * * *"' Citing additional cases."

In the absence of anything more definite from the courts of California we adhere to the holding of this court in the case of Jensen v. Canadian Indemnity Co., 9 Cir., 98 F.2d 469. See also, Neilson v. American Mutual Liability Ins. Co., supra; Gross v. Kubel, 315 Pa. 396, 172 A. 649, 95 A.L.R. 146; Orcutt v. Erie Indemnity Co., 114 Pa.Super. 493, 174 A. 625; Wood v. American Automobile Ins. Co., 109 Kan. 801, 202 P. 82; 26 California Law Review 503; 37 Michigan Law Review 920.

The foregoing conclusions render it unnecessary to pass on any other assignment of error.

Affirmed.