John PERKINS, Appellant,

v.

Bessie PERKINS and State Farm Mutual Automobile Insurance Company, Respondents.

No. 22279.

Kansas City Court of Appeals. Missouri.

Oct. 3, 1955.

Hayes & Durley, Sedalia, for appellant.

Wesner and Wesner, Sedalia, for respondent State Farm Mutual Automobile Ins. Co.

John C. McCloskey, Sedalia, for respondent Bessie Perkins.

V. C. ROSE, Special Judge.

In October 1954, while the automobile of defendant-respondent Bessie Perkins was insured by the defendant-respondent State Farm Mutual Automobile Insurance Company under a policy of liability insurance in which she was the named insured, John Perkins, plaintiff-appellant, whose relationship, if any, to Bessie Perkins is not shown and under the situation here presented is immaterial, was driving the automobile with her permission she being a passenger therein. The car upset, Bessie Perkins claiming certain alleged injuries thereby received to be the fault of John Perkins, sued him for damages and he called upon the State Farm Mutual Automobile Insurance Company to defend him.

This the latter refused to do on the ground that by the terms of its policy the named insured was excluded from making a claim against an additional insured and likewise the additional insured was unprotected in such event.

Upon the refusal of the company to afford him protection John Perkins brought a suit against the defendants for a declaratory judgment defining the rights and liabilities of the parties hereto under the insurance contract above mentioned. In his petition plaintiff after alleging the differences between the parties regarding coverage also alleged that under the policy the Company was liable because of the provisions of the Motor Vehicle Safety Responsibility Law. V.A.M.S. § 303.010 et seq.

The defendant Company filed a separate motion to dismiss and in the alternative if that were denied to strike the portion regarding the Motor Vehicle Safety Responsibility Law. The defendant Bessie Perkins filed a separate motion to dismiss because of no claim stated and that no justiciable controversy was pleaded. The trial court made and entered a judgment overruling that part of defendant Company's motion to strike the allegations pertaining

to the Motor Vehicle Safety Responsibility Law, and further finding that plaintiff's petition failed to state a claim entitling him to the relief sought in his petition and that the Insurance Company was and is not obligated to defend plaintiff or to pay any judgment which might be rendered against him in the suit of Bessie Perkins, sustained both motions to dismiss and dismissed the petition.

The provisions of the policy material to a determination of this case are as follows:

## "A
## "Insuring Agreements

"I. Coverage A—Bodily Injury Liability.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

"Coverage B—Property Damage Liability.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile."

## "B

"II. Defense, Settlement Supplementary Payments.

"As respects the insurance afforded by the other terms of this policy under Coverages A and B the Company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease, or destruction, and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

## "C

"III. Definition of Insured.

"With respect to the insurance for bodily injury liability, for property damage liability and for medical payments the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

## "D

"Exclusions—This Policy Does Not Apply.

"(e) Under Coverage A, to any obligation for which the insured or any Company as his insurer may be held liable under any Workmen's Compensation law; *or to the insured or any member of the family of the insured residing in the same household as the insured.*"

## "E

"Conditions 1 to 12 inclusive apply to the coverage or coverages noted thereunder.

"6. Final Responsibility Laws—
Coverages A and B.

"Such insurance as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of the Motor Vehicle Financial Responsibility Law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period; to the extent of the Coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The insured agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph."

Other pertinent provisions of the insured agreements of the policy are: "The insurance with respect to any person or organization other than the named insured does not apply:

"(a) to any person or organization, or to any agent or employee thereof, operating any automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof;

"(b) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer."

Plaintiff contends that the general rule is that the additional insured is protected under a liability policy in the suit brought by the named insured. That the Motor Vehicle Responsibility Law of Missouri is a part and parcel of the policy by force of law and that if paragraph (e) of the exclusions means what the Company asserts, it is void because it is in conflict with Section 303.190, V.A.M.S. That if not void as in conflict with the statute, then said sections and the provision of the paragraph designated as Coverage A under Section I and Section 3 of the insuring agreement create an ambiguity which must be construed against the Insurance Company, which would thereby afford protection to the additional insured.

Defendant, Insurance Company, takes the position that where an automobile liability policy contains an exclusion clause providing that coverage does not apply under certain specified conditions then under those specified conditions there is no coverage under the contract; that the policy is clear and unambiguous and excludes any claim against an additional insured which may be made by the named insured. The Insurance Company further contends that the policy herein is purely a voluntary policy and is not a Motor Vehicle Liability Policy as defined and provided for in Chapter 303 RSMo 1949, V.A.M.S. That condition 6 of the policy does not become effective until such policy has been certified to, delivered to, and accepted by the Department of Revenue, Safety Responsibility Unit, as a Motor Vehicle Liability Policy as

proof of financial responsibility to comply with the provisions of said Chapter. In referring to the statutes above we are quoting from the respective briefs. The last enactment of this law is to be found in Laws of Missouri for 1953, page 569 et seq.

In answering plaintiff's assertion that the policy provisions are ambiguous defendant Company argues that in condition six of the policy it is specifically provided that such insurance as is afforded by the policy for bodily injury liability shall comply with the provisions of the Motor Vehicle Safety Responsibility Law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile and that the insured agrees to reimburse the company for any payment which it is called upon to make and which it would not have been obligated to make except for the agreement contained in the paragraph condition six.

■■■ As stated in Lynch v. National Life and Accident Ins. Co., Mo.App., 278 S.W.2d 32, 33: "The rule is firmly established in Missouri that insurance policies, like other contracts, receive reasonable interpretations, and that in construing the terms of a policy the courts discharge their full duty when they ascertain and give effect to the intention of the parties, as disclosed by the contract they have entered into. * * *

"The principle that when the terms of an insurance contract are ambiguous, equivocal or uncertain so that the intention of the parties cannot be clearly ascertained by the ordinary rules of construction, the questionable terms are to be construed against the insurer and in favor of the insured, is equally well settled. * * * 'When there is no ambiguity, there is no room for construction. Unequivocal language is to be given its plain meaning though found in an insurance contract. * * * This is so even when considering a restrictive provision of a policy. Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99 [57 A.L.R. 615].'"

Before the enactment of the Missouri Motor Vehicle Safety Responsibility Act there was no doubt about the law in this State. In the case of Sibothan v. Neubert, Mo.App., 168 S.W.2d 981, loc. cit. 983, it was said that: "But while the weight of authority supports the rule that in the absence of an exclusion clause the company's liability is in no wise affected by the fact that the person injured was himself insured under the policy, we know of no dissent from the view that where the policy contains such a clause, it is to be given full force and effect in relieving the company from liability where such a situation is presented. * * * As a matter of fact, of the cases cited in support of the majority holding, practically all of them lay stress upon the fact that one of the considerations inducing such a construction of the policy was the omission from it of a clause excluding liability in the case of injury to a person within the group of those insured."

The Motor Vehicle Safety Responsibility Act first found its way into the law of this State in 1945. Subsection 2 of subd. (a) of Section 18 of that Act provided that a motor vehicle liability policy as the term is used therein should insure the person named therein and any other person using or responsible for the use of said motor vehicle or motor vehicles with the express or implied permission of said insured and provided what exclusions might be contained in such a policy, and as a result the provisions of the policy here considered are to be governed by said act and any amendments thereto made before the issuance of the policy. The above provision has remained in effect since and is now a part of Section 303.210, Law of Missouri 1953, V.A.M.S. § 303.190.

The Act sets up the exceptions which may be lawfully included in a policy of motor vehicle liability insurance. That it need not insure liability under workmen's compensation, bodily injury or death of an employee of the insured while engaged in the employment, other than domestic of the insured, or while engaged in the operation, maintenance or repair of such motor vehicle nor any liability for damage to property owned by, rented to, in charge of or transported by the insured. From quotations from the policy set out in this opinion and from the foregoing it is clear that the policy meets the requirements of the statute in every way save and except the question of whether a claim by the insured against John Perkins is excluded which, if true, would also result in the withdrawal of protection from John Perkins as an additional insured.

Plaintiff-Appellant cites the case of New York Cas. Co. v. Lewellen, 184 F.2d 891, 894, wherein Judge Riddick of the U. S. Court of Appeals, Eighth Circuit said: "By its express terms the policy incorporated the provisions of the Motor Vehicle Safety Responsibility Act of Missouri noted above. The Act represents the public policy of the State, its purpose being the protection of the public from injury or damage by the operation of motor vehicles upon the public highways, and points to a liberal interpretation of the coverages of the policy in the present case", and the cases of Dyche v. Bostian, Mo., 233 S.W. 2d 721 and Homan v. Employers Reinsurance Corp., 345 Mo. 650, 136 S.W.2d 289, 127 A.L.R. 163 as authority to the effect that the provisions of the Act are to be construed as a part of the policy herein.

■ Of course it is correct that the policy provisions cannot contravene Missouri Law. *The question is, do they do so?*

■ In the case of Schenke v. State Farm Mutual Auto. Ins. Co., 246 Wis. 301, 16 N.W.2d 817, cited by Plaintiff-Appellant it was decided that an omnibus coverage clause violated the Wisconsin Statute on the subject, but the court did not decide what limitations could be made under general exclusion clauses. In the case of Olander v. Klapprote, 263 Wis. 463, 57 N.W.2d 734, it was held that statutory restrictions pertaining to the insurer's right to limit its liability under a policy will prevail over policy provisions also pertaining thereto. With these authorities under their particular situations we do not necessarily disagree. If the exclusionary provisions

of the policy in suit do not conflict with Missouri Law then the provision of the policy that it shall conform to the Motor Vehicle Safety Responsibility Act of the state where applicable, in this case Missouri, does not create an ambiguity in the policy which must be resolved against the Company in line with Plaintiff-Appellants cited authorities such as Chamberlain v. Mutual Ben. Health and Acc. Ass'n, Mo. App., 260 S.W.2d 790 and Daub v. Maryland Cas. Co., Mo.App., 148 S.W.2d 58.

A great amount of judicial learning has been expended upon the subject under consideration in different states and under varying circumstances. For example in case of Pearson v. Johnson, 215 Minn. 480, 10 N.W.2d 357 cited by and favorable to respondents was written about two years before the passage of the Minnesota Motor Vehicle Responsibility Act. In some states, such as Virginia, in order to obviate any question about the application of the Act the law of the state was amended in 1948, Acts 1948, c. 201, as follows: "It is provided however that the provisions of this act shall not apply to any policy of insurance except as to liability thereunder incurred *after certification thereof* as proof of financial responsibility." (Emphasis ours.)

That there has been some room for dispute is evidenced by several dissenting opinions.

We think it appropriate to review several of the leading decisions in the United States. In Hawkeye Security Ins. Co. v. Myers, 7 Cir., 210 F.2d 890, it was held under the Illinois law which provides that any person whose driver's license has been revoked or driver's privileges suspended shall, and other persons may, file proof of ability to respond in damages for any liability thereafter incurred resulting from the ownership or operation of the automobile. That if the policy has not been filed with and accepted by the Secretary of the State it is not a liability policy.

In Frye v. Theige, 253 Wis. 596, 34 N. W.2d 793, it was held that a general exclusion clause was valid where applied equally to the named insured and the additional insured, with a dissenting opinion.

In American Mut. Liability Ins. Co. v. Ocean Acc. Guar. Corp., 87 N.H. 374, 180 A. 249, which considered New Hampshire's 1927 Act, is was held that the Act did not compel the owner of an automobile to carry liability insurance *and that if such an Act does not prohibit the registration of a motor vehicle without a certificate of liability insurance* then the Act does not prohibit the making of a different kind of policy and its exclusions may be pleaded. (Emphasis ours.)

In the case of State Farm Mut. Automobile Ins. Co. v. Arghyris, 189 Va. 913, 55 S.E.2d 16, a Virginia case, the court held that where a person operating insured's automobile with the latter's permission was charged with leaving the scene of an accident and refused to cooperate as required by the policy in the defense of a claim the Company was not liable. The plaintiff insisted that under the terms of the Virginia Motor Vehicle Responsibility Act the Company was absolutely liable. The court held that the policy was a voluntary act between the policy holder and the Company and it not having been certified the Act was not applicable.

In the case of State Automobile Mut. Ins. Co. v. Sinclair, D.C., 96 F.Supp. 267, a Kentucky case in which the insured's failure to give the insurer notice of an accident in which an automobile covered by a liability policy was involved as soon thereafter as practicable, it was held this constituted a breach of the policy terms so as to absolve the insurer from obligation to defendant in actions against the insured and the driver of the automobile for injuries sustained in the accident and from liability for the amount of a judgment on a jury verdict for the plaintiff. The court so holding in the absence of evidence that the driver's or insured's driver's license or registration of the automobile was suspended and that the policy was certified as proof of financial responsibility under the State Financial Responsibility Act the Company was not liable.

We believe a study of the Motor Vehicle Safety Responsibility Law of Missouri discloses that under its terms the operator of a motor vehicle involved in an accident in this state must within ten days thereafter report the matter to our Director of Revenue and if within 20 days therefrom satisfactory evidence is not filed with the latter, that the operator is not subject to the security and suspension provisions of Section 303.060, Laws of Mo. 1953, V.A.M.S. § 303.070, or that he had in effect an automobile liability policy as stated in subsec. 3, then he shall within 45 days after the accident report suspend the driver's license of the operator unless security is deposited, or in case of receipt of certified copy of a judgment remaining unsatisfied for sixty days or more.

Section 303.210 [303.190] of the Act defines a "'motor vehicle liability policy'" to mean an owner's or operator's policy of liability insurance certified as provided in Section 303.190 [303.170] or Section 303.200 [303.180] as proof of financial responsibility.

As stated in the case of McCarthy v. Insurance Co. of Texas, Tex.Civ.App., 271 S.W.2d 836, 837, the need for such a certificate of insurance does not arise until after there has been a first accident. Section 303.130 [303.100] gives the penalty incurred upon receipt by the Director of a certified copy of a judgment against a person covered by the Act as above stated. By reason of the foregoing proof of financial responsibility is necessary for the removal of a suspension of a license and registration *which occurred on account of a prior accident.* Such proof may be made by furnishing the Director of Revenue, Safety Responsibility Unit, a certificate showing coverage and the only provision for absolute insurance occurs in cases where such a certificate has been furnished. This because Sec. 303.210 of the Act defines a Motor Vehicle Liability policy as one which has been certified. Under the pleadings in this case no certificate has been furnished to the Director of Revenue nor is one required by the Act in advance of the first accident. This view is sup-

ported in very similar language by the above case.

A reading of the Texas Safety Responsibility Law, Art. 6701h, Vernon's Texas Statutes, on which the foregoing decision is based, shows that Texas law to be substantially the same as that in Missouri and the court says:

"The Texas act is a voluntary rather than a compulsory financial responsibility act, and under the statutes of other states, which contain comparable provisions, we find many decisions in line with the above result. Kentucky Farm Bureau Mut. Ins. Co. v. Miles, Ky., 267 S.W.2d 928; State Farm Mutual Automobile Ins. Co. v. Arghyris, 189 Va. 913, 55 S.E.2d 16; Farm Bureau Mutual Automobile Ins. Co. v. Hammer, 4 Cir., 177 F.2d 793; State Compensation Ins. Fund v. Bankers Indemnity Ins. Co., 9 Cir., 106 F.2d 368; Brodsky v. Motorists' Cas. Ins. Co., 112 N.J.L. 211, 170 A. 243; Id., 114 N.J.L. 154, 176 A. 143; McLaughlin v. Central Surety & Ins. Corp., 166 A. 621, 11 N.J.Misc. 440; Ocean Accident & Guarantee Corp., Ltd. v. Peerless Cleaning & Dyeing Works, 162 A. 894, 10 N.J.Misc. 1185; Letson v. Sun Indemnity Co., 147 Misc. 690, 264 N.Y.S. 519; Id., 241 App.Div. 629, 269 N.Y.S. 965; Cohen v. Metropolitan Cas. Ins. Co., 233 App.Div. 340, 252 N.Y.S. 841."

In the case of Farm Bureau Mut. Auto. Ins. Co. v. Hammer, 177 F.2d 793, the United States Court of Appeals, Fourth Circuit, held that under the provisions of the Virginia Motor Safety Responsibility Act the same referred to required policies only, and did not apply to a motor vehicle liability policy which had not been certified under the Act, although a dissenting opinion was filed.

We also find that our Section 303.210, Laws of Missouri 1953, V.A.M.S. § 303.-190, is identical with the Iowa Statute on the subject, that being Section 321A.21, Acts 1947 (52 G.A.) ch. 172, § 21, and in the case of Hoosier Cas. Co. of Indianapolis, Ind. v. Fox, 102 F.Supp. 214, the United States District Court N. D. Iowa E. D. in a case where the insurer sought

a declaratory judgment of nonliability under an automobile liability policy on the ground of fraud on the part of the insured in the procurement of a policy after insured's motor vehicle was involved in an accident in which two other parties were injured and after the insured filed a notice pursuant to the Iowa Motor Vehicle Finance and Safety Responsibility Act that the policy was in effect, in the absence of express contractual provision or explicit statutory provision giving injured persons rights superior to those of the insured that if the policy were voidable as between the insurer and the insured because of fraud in its procurement it was held also subject to the same contingency as to the injured parties, the court stating that the kind of policy referred to in the Iowa Act is one which has been certified as proof of future financial responsibility. The words "motor vehicle liability policy" being used in the act as a term of art, having reference only to policies certified as proof under the proof section of the Act.

The Iowa Court stating and referring to the fact that the cases of State Automobile Mutual Ins. Co. v. Sinclair; Farm Bureau Mutual Auto. Ins. Co. v. Hammer, and State Farm Mutual Automobile Ins. Co. v. Arghyris, supra, arose under statutes like Iowa's, having both security and proof provisions.

That the general rule is widely adopted is shown by a decision of the United States District Court W. D. Louisiana, in the case of New Zealand Ins. Co., Ltd. v. Holloway, 123 F.Supp. 642, 647, where District Judge Hunter states: "We have been unable to find decisions by Louisiana courts or by federal courts sitting in Louisiana on the subject. We, therefore, turn to the jurisprudence of other states who have adopted the uniform Motor Vehicle Safety Responsibility Law. With but one exception, every other court in this country faced with the same issue has resolved it the same way, namely: that the Motor Vehicle Liability Act has no effect unless the policy was actually required and certified under the Act."

■ In view of the foregoing we find the result reached by the trial court correctly interprets the policy in suit and our own act; that it follows and adopts the majority rule prevailing in most of the United States and we are unable to find sufficient grounds to disturb it. The judgment is affirmed.

CAVE and BROADDUS, JJ., concur.

On Motion for Rehearing

PER CURIAM.

The appellant has filed a motion for a rehearing or in the alternative to transfer this case to the Supreme Court stating that the original opinion does not clearly decide whether the policy of insurance itself was ambiguous because of conflict between the provisions in the paragraph designated as coverage A and section III of the insuring agreements and paragraph (e) of the exclusions.

Coverage A in question provides: "Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * caused by accident and arising out of the ownership, maintenance or use of the automobile."

Section III of the Insuring agreements is "Definition of Insured. With respect to the insurance for bodily injury liability, for property damage liability and for medical payments for the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission." (Then follows certain inapplicable material.)

Exclusion (e) is: "This policy does not apply under coverage A to any obligation for which the insured or any company as his insurer may be held liable under any

workmen's compensation law; or to the insured or any member of the family of the insured residing in the same household as the insured."

Appellants argues that coverage A does not except any claim made by the named insured against an additional insured. That it makes no distinction as to who may be the claimant but covers the claims of any person regardless of who he is. That under construction the exclusionary paragraph reads: "This policy does not apply: under coverage A; or to the insured." That under the proper grammatical construction of that paragraph, the paragraph means that the policy does not apply under coverage A to the insured. If this language is interpreted as written then by this exclusion the company has taken completely away from the insured the protection which the policy gives under coverage A. That the phrase "or to the insured" refers back to the phrase "under coverage A". That it cannot be said to refer back to anything in the preceding clause which is separated by the semicolon. Paragraph (e) therefore, when considered with paragraph designated coverage A creates an ambiguity. On the question of punctuation appellant cites the case of Orlosky v. Haskell, 304 Pa. 57, 155 A. 112, 114, where the Supreme Court of Pennsylvania in construing a statute of that state said: "A qualifying phrase which appears in a paragraph before a semicolon does not leap over or bridge the semicolon and qualify what follows the semicolon. Provisos ordinarily qualify what precedes not what follows them."

In this case the policy in suit marked appellant's Exhibit "A" is before the court and shows that at the top of page three it is stated in black-faced italics "This policy does not apply:" and then down the left side of the half page directly below such statement appear seven separate paragraphs of material including paragraph (e). On the right-hand side of the page appear eight separate paragraphs. All paragraphs are lettered. Below this, which covers about one-third of the upper page, appear the con-

ditions of the policy below that word, located in the center of the page.

It seems to us, laying aside technical objections, the policy at this point simply states that *this policy does not apply to the insured.* The fact that there is a semicolon after the first clause of the paragraph and the word "or" before the words "to the insured" we feel cannot destroy the plain meaning of the paragraph under consideration. The fact that it is ungrammatical or mispunctuated, if it is, as urged by appellant cannot avail if the meaning is plain.

In the case of Morris v. State Farm Mutual Automobile Insurance Co., 88 Ga. App. 844, 78 S.E.2d 354, 357, where the plaintiff in error complained about the presence of a semicolon before the clause " 'or to the insured' " the court said: "The plaintiffs in error argue that the punctuation in the exception is important. We do not consider the semicolon before the last clause beginning with 'or to the insured, etc.' makes any difference whatever. We do not think the meaning would be in any way different if the semicolon was omitted or replaced by a colon or a comma."

In the case of Pearson v. Johnson, 215 Minn. 480, 10 N.W.2d 357, loc. cit. 358, a clause identical with the one in this case was quoted, except that a comma only appears where here there is a semicolon. In that case the court without hesitation approved the exclusion clause and from a study of the context of the policy there set out and considered we feel no other course was possible.

We have considered other cases cited by appellant concerning policy provisions held to be ambiguous under their particular facts but we do not find that they rule this case. On the other hand in the considerable litigation we have reviewed concerning this matter we find no substantial supporting authority for a different conclusion than we have reached. It follows that the motion for a rehearing or in the alternative to transfer the case to the Supreme Court should be and the same is hereby ordered overruled.