GEORGE PRICHARD and ROBERT PRICHARD, Respondents, v. NATIONAL PROTECTIVE INSURANCE COMPANY, A CORPORATION, Appellant.

Kansas City Court of Appeals. Opinion delivered Feb. 3, 1947.

188

*Chas. D. Brandom, James P. Aylward, George V. Aylward, Terence M. O'Brien,* for Appellant.

*Sam T. Evans,* for Respondents.

BOYER, JOHN S., C.—This is an appeal from a judgment of $1000, with interest from August 1, 1945, in favor of the plaintiffs and against defendant. The plaintiffs were the named beneficiaries in an accident policy issued by defendant to Mrs. Anna L. Havner. The policy provided for the payment of $1000 for the loss of life of the insured resulting from injury caused by any accident described in Part 2 of the policy. Part 2 specified various accidents for which the Company would pay benefits when injury was sustained in the manner described. Paragraph I of this part of the policy, upon which this action was based, reads as follows:

> "BURNING BUILDINGS. By the burning of a church, school building, store, lodge room, theatre, municipal building, office building, or library, while the Insured is therein, and provided the Insured was therein at the beginning of the fire and is burned by such fire or suffocated by the smoke therefrom (this Clause I shall not cover the Insured while acting as a watchman, policeman, or a volunteer or paid fireman)."

The insured lost her life in the burning of the First National Bank Building of Gallatin, Missouri, on May 3, 1945.

The case was tried before the court without a jury. Appellant states that "under the pleadings and agreements on the facts, the only issue was whether the structure in which the insured met her death was an 'Office Building' within the meaning of the policy." The court in its judgment made all findings requisite for recovery under the policy on account of the death of the insured, and specifically found that the First National Bank Building, where the insured met death, was an office building within the meaning of said insurance policy.

This being a jury-waived law case it is here for review upon both the law and the evidence and by command of the statute, Sec. 114 (d)

of the Civil Code, Laws of Missouri 1943, page 388, "the judgment shall not be set aside unless clearly erroneous."

Appellant insists that the court erred in holding and finding that the structure in which insured met her death was an office building within the meaning of said policy and in rendering judgment for respondents and against appellant. This assignment presents the decisive question in the case and upon which the respective parties in brief and argument present opposing views, both in reference to the interpretation and effect of the evidence and the law which should be applied thereto.

In approaching a consideration of this case the first essential is a clear understanding of the facts. The First National Bank owned the north 80 feet of the east 21 feet of a certain specified lot of ground upon which the building was erected. The first floor of the building was described as being 21 feet wide and 80 feet deep. The Bank had occupied the lower floor of its building for general banking purposes since 1901 up to the date of the fire. That part of the second floor owned by the Bank, being of the same dimensions as the lower floor, was divided into rooms numbered from 1 to 7 inclusive. Room No. 1 had been occupied for six or seven years prior to the fire by Mr. W. O. Tague who was a justice of the peace and engaged in the insurance business. He had vacated this room at the request of the Bank a short time prior to the fire, and the Bank had orally leased it for office purposes to a more desirable tenant. It had been occupied as a doctor's office and as an insurance and justice of the peace office since 1922, except for a short interval six or seven years prior to the fire when it was occupied as living quarters. The insured and her sister occupied Room No. 2 at the time of the fire and for more than two years prior thereto as an insurance office. They were engaged in writing fire and windstorm insurance and conducted all of their insurance office work in that room. The insured was burned to death in Room No. 2 during the burning of the First National Bank Building. Room No. 2 had been occupied for office purposes since 1922, except for a short period of time when it was used by a young lady as sleeping quarters. Rooms numbered 3, 4, 5 and 6 were occupied by various persons for living quarters. There were kitchenettes in connection with said rooms which were used by the occupants. In Room No. 7 was a common toilet for all tenants on the second floor. Adjacent property owners built an extension to their building which formed an ell across the south end of the bank building. On the second floor of said structure there were three additional rooms numbered 8, 9, and 10, which were accessible from a hallway extending from the stair landing on the second floor of the bank building to the south wall of the other property. Rooms 8 and 9 were occupied by a tenant as living quarters and Room 10 was occupied by insured and her sister as their living quarters. The arrangement of all these rooms

on the second floor of the adjoining buildings gave the appearance of one structure, although the rooms were under different ownership. There was no solid brick wall between that part of the second floor owned by the Bank and that owned by others across the south end of the bank's property. The additional rooms under other ownership were separated from the bank's property merely by an ordinary partition consisting of studding and plaster. All tenants on the second floor of the bank's property paid rent to the Bank, and tenants in rooms 8, 9, and 10 paid their rent to the owners of that structure. These added rooms 8, 9, and 10 were also accessible from a stairway at the rear or south end of said structure, and the second floor of the bank building was reached by an open stairway constructed from the street level up to the second floor. This stairway was built immediately west of the west wall of the bank building. There was a solid brick wall on the west side of the bank building extending to the top of the second story. When the stairway reached the level of the second floor there was an opening through this wall by which the hallway on the second floor was reached. This stairway was continuously open, both day and night, for the use of tenants of the building, officers and employees of the Bank, and the public generally. All rooms on the second floor were reached from the hallway through doorways leading to said rooms.

The foregoing is shown by the testimony of the president of the bank and other witnesses, and by drawings and exhibits offered in evidence purporting to show the arrangement of space in the bank building and also the additional rooms adjoining it. There was testimony relative to a building on the west side of the bank structure which was occupied by the Farmers Store. At the conclusion of all the evidence the court announced that the testimony relative to that part of the building occupied by the Farmers Store was stricken, and that the case was submitted on the question as to whether the insured met her death in the burning of an office building.

The finding and judgment of the court have already been described. The defendant filed an after judgment motion to set aside the finding and judgment and to enter judgment in favor of defendant, and also filed its motion for a new trial. These motions were overruled and defendant in proper time and manner has perfected its appeal.

The briefs of both parties are devoted largely to a consideration of the rules of law applicable to the interpretation of the terms and provisions of an insurance policy. Appellant contends that the term "office building" is not ambiguous and that it must be given its usual, ordinary and natural meaning; that the First National Bank Building was not so dominantly used for offices as to constitute it that particular kind of building, and that the building in which the insured met her death was not an "office building" within the meaning of the policy. In presenting this contention, appellant emphasizes the fact of the

existence of living quarters on the second floor of said building, and includes in its estimate of space and the number of rooms occupied for living quarters not only the rooms in the bank building proper, but also the rooms adjacent thereto which are located in another and separate building.

For the purposes of this case, we think the bank building must be considered as a separate and distinct unit and independently of any adjoining building in order to determine the occupancy and use of the space in the bank building. The second floor of the bank building was of the same dimensions as the first floor and if the rule of dominant occupancy is to be applied in determining the character of the building, we think it was dominantly in use for office purposes because the first floor was occupied entirely by the Bank and the directors' office or room and this space, together with the two business offices on the second floor, would certainly constitute a majority of the floor space in the building.

Respondents contend that the term "office building" is susceptible of different meanings and is subject to that construction most favorable to the insured.

Appellant insists that a policy is not ambiguous where the languge thereof has acquired, by judicial construction, a clear and definite meaning, and as authority for this proposition cites Order of United Commercial Travelers of America v. Knorr, 112 F (2d) 679, 682. The meaning of the term "loss of an eye" was the provision in an accident certificate under consideration. The court ruled that "it is quite uniformly held that the entire sight is lost, although it is not completely destroyed, if what sight is left is of no practical use or benefit." This pronouncement is supported by an extended citation of authorities. This is followed by a statement in the opinion that there could be no ambiguity in the meaning of a term when it has been judicially defined. Relying upon this declaration, appellant insists that the term "office building" has been defined and characterized by the courts in such manner as to give it a clear and definite meaning and that the parties to the policy in this case not only had a right to rely upon such characterization, but are bound thereby. Two cases are cited to support this contention. They are F. W. Woolworth Company v. Davis, 41 F. (2d) 342, 344, and Dunn v. National Casualty Co., 5 N. Y. S. (2d) 699, 700. In the Woolworth case the plaintiff was an employee of one of the Woolworth retail stores. A part of his duties was to operate an elevator which was used by the store exclusively for transporting freight between the floors of that part of the building occupied and used by the store. The third floor of the building consisted of living quarters; the first and second floors were occupied by the defendant's store, except two front offices which were not connected with, nor occupied by, the defendant's store. Plaintiff walked into an open elevator shaft, was injured, and recovered a judgment

against the defendant. The judgment was reversed because the court found under the evidence that plaintiff was guilty of contributory negligence. That part of the opinion upon which appellant relies refers to defendant's special plea as to jurisdiction which presented the proposition that the injury was compensable only under the Workmen's Compensation Laws of Oklahoma. The statute provides: "Compensation provided for in this act shall be payable for injuries sustained by employees in the following hazardous employments, to-wit: . . . water-works, reduction works, elevators, dreges, smelters, powder works, . . . operation and repair of elevators in office buildings . . . ." The court distinguishes between the meaning of the word "elevator" when first used, and the words "elevators in office buildings" and then concludes as follows: "Nor was the plaintiff engaged in the 'operation and repair of elevators in office buildings,' for the simple reason that this was not an 'office building'; it was a retail store, and the presence of the disconnected office on the second floor does not change its character. The special plea to the jurisdiction was properly overruled." No authority of any character is cited by the court for this declaration, and in characterizing the building as a retail store the fact that the third floor of the building consisted of living apartments was apparently ignored; at any rate, there is no mention made in the entire opinion of any effect or influence which the occupancy of the third floor might have had in determining the character of the building.

In the Dunn case, supra, the plaintiff was the beneficiary under an accident policy issued by the defendant insuring the life of plaintiff's son for $500 in the event his death occurred "by the burning of any church, theatre, library, school or municipal administration building in which the insured shall be at the beginning of such fire, and is burned by such fire or suffocated by the smoke therefrom, but this clause shall not apply to nor cover the insured while acting as a watchman, policeman, or a volunteer or paid fireman." The insured at the time of the fire which caused his death was an enrollee at a CCC camp. He was assigned to duty as a night watchman and was quartered in a building designated as a "Recreation Building" which was part of the camp. The building contained a basketball court in the center, two rooms in the north wing, one of which was the insured's quarters, and the other was used for the purpose of developing and printing pictures, and in the south wing were a camp exchange and quarters for two other men. The fire occurred after the insured's hours of duty as a night watchman had ended and after he had retired to his quarters in the building. He was asleep at the time the building began to burn and did not awaken until the fire had progressed to such an extent that escape was impossible. The building was entirely destroyed. The question determined by the court was whether the building was one enumerated in the policy. The opinion recites:

"Plaintiff contends that the building was a church because it was used for religious services approximately once every two weeks when the district chaplain preached to the members of the corps enrolled in the camp; that it was a theatre because it had a stage therein and, at intervals on the average of twice a month, theatrical performances were given and, from time to time, basketball games and boxing matches were held therein, all without any admission fee and for the entertainment of the members of the corps and their guests; and finally, that it was a school because, as part of the camp program, classes were held there from time to time, in which the members of the corps were given instruction in certain handicrafts, including leathercraft, hook rug making and photography. In addition, the building was used for weekly meetings of members of the corps."

In holding that the building did not come within any one of the categories named in the policy, the court said:

"Actually, it was a general building which could not more appropriately be designated than it is, namely, a "Recreation Building," adaptable for many temporary uses, but not dominated as to its character by any particular use. The fair import of the language of the policy, which, needless to say, contains a very narrow assumption of risk on the part of the defendant, is that it covers a building so dominantly used as to be known and characterized as a 'church, theatre, library, school or municipal administration building.' "

We do not find anything in either of the last mentioned cases wherein the term "office building" is judicially defined. It may be inferred that certain characteristics of the structures in question were taken into account in determining what designation should be applied to the buildings under consideration. We do not agree with appellant that there is any judicial determination in these cases of the meaning of the term "office building" that would be binding upon the insured or her beneficiaries in the policy under consideration in this case. The buildings described in those cases are not comparable in construction or use to the building in which the insured in this case lost her life.

The term "office building" as used in the policy under consideration is not defined or limited in any manner. There is no adjudication by a Missouri court, or by any other court, called to our attention that defines the term "office building." According to the common parlance of the street, we are "on the loose" and are at liberty to formulate our own definition of the term if we should deem it advisable to do so. The difficulties attendant upon such an effort are obvious and we do not consider a definition practicable for application to all cases because of the divergent facts that might appear in any given case. Nor is there any need for definition because any one using such term can readily supply his own definition by specifically indicating the sense

which it is intended to have. We are of opinion that where such a term is used, as in the present case, without qualification, its meaning and application are subject to any fair and reasonable interpretation consistent with the language used and with the facts and circumstances surrounding the parties at the time of the execution of the policy and at the time of the casualty. Under the facts of record, we hold that the Insurance Company is not entitled to any restricted meaning of the term "office building" in the absence of any express limitation or exception, but that said term is one subject to latitude in meaning and that the court is entitled to accord to it a liberal construction in favor of the insured. What was said by the Supreme Court in Henderson v. Mass. Bonding & Ins. Co., 337 Mo. l. c. 84 S. W. (2d) 922, 924, we think is particularly appropriate and applicable here. On page 6 of the State Report the opinion states in reference to the construction of insurance contracts:

"The function of the court is to construe them, not to make them. Nevertheless, since the policies are prepared by the insurer, the insured usually has no voice in the wording of his contract, but must, to a large extent, take it as it is written. It is, therefore, well established that where the meaning of a policy provision is doubtful or susceptible of different constructions, the policy should be construed strictly against the insurer and liberally in favor of the insured. (Citing authorities). The insurer has the opportunity to have the language of the contract selected with great care and deliberation by experts and legal advisers acting exclusively in its interests, and it is responsible for any ambiguities found therein. Generalities usually make ambiguities. The insurer can always prevent the necessity of strict construction against it, or any construction at all, by stating the terms of any provision so clearly, definitely, and specifically as to make its meaning so plain that no room is left for construction."

It was ruled in that case that the provision "no explosives are made, sold, kept or used on the insured premises except as follows: (no exceptions)," was not sufficient to exclude the keeping of Fourth of July fireworks, and that the Company failed to make the meaning and the terms of its policy so plain, clear and definite as to leave no room for construction. It was, therefore, held that the term "explosives," without qualification or exception, was ambiguous and did not exclude fireworks.

We are likewise of opinion in the case before us that the meaning of the term "office building" as used in the policy under consideration was not given a meaning so plain, clear and definite as to leave no room for construction. The manner in which that term is used is general and breeds ambiguity. If it was the intention of the Company to exclude an office building occupied in part for living quarters, it should have said so in apt words that would leave no

doubt as to the meaning intended. Where doubt exists it must be resolved in favor of the insured. The Reports contain many cases wherein terms used in insurance policies were held to be subject to doubt and ambiguous. Some of them are: Great Eastern Casualty Co. v. Blackwelder, 94 S. W. 843, 844, wherein it was held that the term "building" was ambiguous; State ex rel. Maryland Casualty Co. v. Hughes, 164 S. W. (2d) 274, 277, wherein the term "not employed by" and the term "employee" were held to be ambiguous; likewise "within a railroad car" in Schmohl v. Travelers' Insurance Co., 189 S. W. 597, 600; 197 S. W. 60; State ex rel. v. Ellison, 266 Mo. 580, 182 S. W. 740; the term "by the wrecking and disablement of an automobile" in Kimbrough v. National Protective Insurance Assn., 225 Mo. App. 913, 35 S. W. (2d) 654, 657; a "motor-driven car" in Burrus v. Continental Life Insurance Co., 225 Mo. App. 1129, 40 S. W. (2d) 493, 495; "total disability" in Parks v. Maryland Casualty Co., 230 Mo. App. 383, 91 S. W. (2d) 1186; the "disablement of a horse-drawn car" in Hall v. Federal Life Ins. Co., 71 S. W. (2d) 762, 764. All of the foregoing terms in the cases cited were held to be ambiguous and the policies were construed in a manner to cover the casualty.

In view of all of the foregoing, we are of opinion and hold that there was no error in the finding of the learned trial court that the insured in this case met her death in an office building within the meaning of that term as used in the policy, and that the judgment of the court should be affirmed. The Commissioner so recommends. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.