260 S.W.2d 790 (1953)
CHAMBERLAIN
v.
MUTUAL BEN. HEALTH & ACC. ASS'N.
No. 28476.
St. Louis Court of Appeals. Missouri.
September 15, 1953.
Motion for Rehearing or to Transfer to Denied October 16, 1953.
*791 Harry Gershenson, St. Louis, Smith & Smith, Taylor Smith, Jr., Farmington, for appellant.
Roberts & Roberts, J. Richard Roberts, Farmington, for respondent.
Motion for Rehearing or to Transfer to Supreme Court Denied October 16, 1953.
HOLT, Jr., Special Judge.
This is an action on an accident policy brought by the designated beneficiary for the death of the insured in an automobile-train collision. A jury was waived and the case tried by the court. From an adverse judgment the defendant has appealed. We shall designate the parties as below.
The defendant in its answer and at the trial admitted everything necessary to a recovery by the plaintiff except the effect on her claim of the following paragraph in the policy:
"The term, such injuries, as used in this policy, shall mean bodily injuries received through accidental means while this policy is in force, but shall not include: (1) injuries received by a person who, at the time of issuance of this policy, is totally blind, totally deaf, or who has lost an eye or limb (in all cases, the limit of the Association's liability shall be the amount of the premium paid, which will be returned to the Insured upon notice to the Association), (2) injuries received while on duty as a railroad employee (purely clerical employees excepted), a paid or volunteer fireman or a law enforcement officer, (3) injuries caused by the Insured's being under the influence of narcotics or intoxicant, (4) injuries received while the Insured is riding or driving in races or testing any automobile on race tracks or speedways, (5) injuries intentionally inflicted upon the Insured by himself, while sane, (6) injuries resulting from the Insured's commission of, or attempt to commit, a felony, (7) injuries, fatal or nonfatal, of which there shall be no visible contusion, wound or other marks or evidence of injury on the exterior of the body at the place of injury (accidental drowning excepted), (8) hernia, or (9) injuries caused by war or any act of war or received while engaged in military or naval service of any country *792 at war (upon notice to the Association the pro rata unearned premium shall be returned to the Insured)." (Emphasis ours.)
The plaintiff on direct examination testified: the insured, when he was killed February 5, 1951, was on his way to Doe Run, Missouri, to get a baby sitter for the Sheriff of St. Francois County; and he was to bring the baby sitter to the Sheriff's home.
On cross-examination plaintiff testified: the insured was Chief Deputy Sheriff under Sheriff Smallen; he served papers and did anything the Sheriff needed him to do; part of his job was arresting people and bringing them to, and taking them out, of jail; he had a blackjack and a gun; the latter being on his person at the time he was killed; he was supposed to be back in court that morning when it opened; he was on twenty-four hour duty; he had papers to be served over the sun visor of his car the Friday before the Monday he was killed; he went out on alarms and disturbances at night and in the day time; he went out on fights; he looked into crimes committed; and he was at the jail Sunday night before the Monday he was killed.
Dewey Smallen, the Sheriff, testified on direct examination in behalf of plaintiff: he became Sheriff January 1, 1949; the insured was a part-time deputy for several months and became his chief deputy about May 1950; he was notified of the collision about 8:20 a. m.; the insured was going to Doe Run to get a baby sitter to bring to his home when killed; the insured had no warrants and was not going out on any criminal work in the vicinity of Doe Run when killed; the insured had a number of summonses and executions in his car at the time for that direction but he wouldn't have been going to serve them for he knew he had to be back; the insured had nothing in his car going to Doe Run; he asked the insured to go to Doe Run that morning; that day was the first day of the term and the insured knew he had to be back by 9:30 a. m. to be sworn for the term; about 99% of the insured's work was civil, serving processes; and the insured had done no criminal work that Monday morning or the previous Sunday night.
On cross examination the Sheriff testified: the insured was his only deputy at the time and assisted him in criminal work; he hadn't discussed with the insured serving any papers in Doe Run; the insured had nothing to do and was not on duty in that territory when he was killed; the insured was subject to call twenty-four hours a day; and that on February 9, 1951, he signed the following statement: "I am sure Mr. Chamberlain was on business at the time of the accident but I had not seen him the morning of the accident. He had told me the day before that he was going to serve some papers in that direction & also bring back a girl to the courthouse. As I stated I am sure he was on business."
On redirect examination the Sheriff testified by "business" in the statement he meant going after the girl for him.
In behalf of the defendant the plaintiff testified she had received $375.00 Workmen's Compensation.
Mr. Robert H. Burns in behalf of the defendant testified: he was assistant claim agent for the Western Casualty and Claim Company in St. Louis and had with him a file in the matter of Marvin Chamberlain v. St. Francois County; a draft of his company showed on May 14th a payment of $325 was made to the plaintiff; the draft was marked a payment for 13 weeks compensation arising out of the death of Marvin Edward Chamberlain February 5, 1951, insurer and employer St. Francois County; a report of injuries, Form 1 of the Workmen's Compensation Commission was filed with his company February 7, 1951, by the Farmington agent of the Western Company; and that he made a report of the accident to the Workmen's Compensation Commission.
We have set out a complete summary of the testimony as it was relatively brief and one of the main points raised by the defendant here is that the trial court's findings that the deceased at the time of *793 his death was going to Doe Run to obtain a young lady to act as a baby sitter for the Sheriff and his wife, and that none of the various legal papers and writs he had with him then were for service in that locality, were unsupported by the evidence. Reading the testimonial summary, supra, is sufficient answer to that contention, especially when, in a case tried without a jury, though this court is to reach its own conclusion on the facts, it is not to do so unless the trial court is "clearly erroneous" nor without giving "due regard * * * to the opportunity of the trial court to judge of the credibility of the witnesses." Section 510.310, paragraph 4, RSMo 1949, V.A.M.S; Cosentino v. Heffelfinger, 360 Mo. 535, 229 S.W.2d 546. We do not think such findings were "clearly erroneous."
The defendant's other main contention here concerns the trial court's declaration of law that the exclusion phrase "on duty as a law enforcement officer" meant that there was no liability to the insured for injury or death when he was actually engaged at the time in the enforcement of the criminal laws of the state.
The construction of that phrase is really the crux of this case and the citations in the parties briefs were primarily directed to it, those for the plaintiff supporting the rule of construction that ambiguous language in an insurance policy must be strictly construed against the insurer, and those for the defendant the rule of construction that unambiguous language in an insurance policy must be enforced. No case was cited by either party construing the language involved, and we have been unable to find any.
"Ambiguous" is defined in Webster's International Dictionary as "Capable of being understood in either of two or more possible senses." The phrase involved here certainly is capable of being understood in two possible senses. In the following Missouri cases construing insurance policies the following words or phrases were held to be ambiguous: "office building," Spiller v. Washington National Insurance Co., 240 Mo.App. 226, 206 S.W.2d 581, and Prichard v. National Protective Insurance Co., 240 Mo.App. 187, 200 S.W. 2d 540; "employee" in State ex rel. Maryland Casualty Co. v. Hughes, 349 Mo. 1142, 164 S.W.2d 274; "accident" in Soukop v. Employers' Liability Assurance Corp., 341 Mo. 614, 108 S.W.2d 86, 112 A.L.R. 149; "total disability" Parks v. Maryland Casualty Co., 230 Mo.App. 383, 91 S.W.2d 1186; "motor-driven car" Burrus v. Continental Life Insurance Co., 225 Mo.App. 1129, 40 S.W.2d 493; and "in a railway passenger car" Schmohl v. Travelers Insurance Co., Mo.App., 189 S.W. 597. We see little, if any, difference in those words and phrases and the phrase and component words under consideration here.
It follows that the rule of construction to be applied here is, as stated in 29 Am.Jur., § 166: "The general rule applicable to contracts generally, that a written agreement should, in case of doubt as to the meaning thereof, be interpreted against the party who has drawn it, is very frequently applied to policies of insurance and constitutes an important rule of construction in such respect, in view of the fact that ordinarily, and in practically all cases, it is the insurer who furnishes or prepares the policies used to embody the insurance contracts. The general rule is that terms in an insurance policy, which are ambiguous, equivocal, or uncertain to the extent that the intention of the parties is not clear and cannot be ascertained clearly by the application of the ordinary rules of construction, are to be construed strictly and most strongly against the insurer, and liberally in favor of the insured, so as to effect the dominant purpose of indemnity or payment to the insured, especially where a forfeiture is involved, since the forfeiture of insurance policies is not favored by the courts. As a corollary to the foregoing general rule, it is equally true that if conditions, exceptions and exemptions from, or limitations of, the liability of an insurer are not expressed plainly and without ambiguity, they will be construed strictly against the insurer and liberally in favor of the insured, in order that the purpose of insurance shall not be defeated." *794 Prichard v. National Protective Insurance Co., supra; Schorling v. United States Fidelity & Guaranty Co., 239 Mo.App. 431, 188 S.W.2d 369; Heald v. Aetna Life Insurance Co. of Hartford, Conn., 340 Mo. 1143, 104 S.W.2d 379; and Henderson v. Massachusetts Bonding & Insurance Company, 337 Mo. 1, 84 S.W.2d 922. Applying this rule, we feel that the trial court's construction of the exclusion clause involved was a reasonable and a proper one to effect the purpose of the insurance. An insurance company may cut off liability under its policy with clear, sharp language, but it cannot do so with that dulled by ambiguousness.
The defendant in inserting this clause in its policy, as with several of the exclusions inserted, was seeking freedom from liability for unusually risky activities by the insured. A deputy sheriff in his activities connected with civil law enforcement is not exposed to unusual risks. It is the general rule in connection with the violation of law exception frequently found in accident policies, "In order to bring the injury or death within the terms of this exception there must be a clear violation of some criminal law; and no protection is afforded to insurer by the fact that, when insured was injured or killed, he was violating a civil right, a law or ordinance not criminal in its nature, or a rule of morality." 45 C.J.S., Insurance § 786. That rule seems to us analogous to the instant exclusion and to support its confinement to criminal law enforcement.
We, therefore, do not think the trial court's declaration construing the clause involved "clearly erroneous." Section 510.310, paragraph 4, RSMo 1949, V.A.M.S.
The defendant's complaint of the trial court's declaration of law that the payment of workmen's compensation to plaintiff would not bar her recovery seems to us of little significance. Absent an award, any action taken by the plaintiff in connection with workmen's compensation at most could only be evidentiary by way of an admission against interest. The compensation carrier might make a payment to plaintiff for any number of reasons immaterial here. The workmen's compensation payment was irrelevant to any issue before the trial court, except possibly the credibility of the plaintiff, and we give the trial court due regard for the opportunity to judge that.
The judgment is affirmed.
BENNICK, P. J., and ANDERSON, J., concurs.