## FERGUSON v. POSTAL LIFE & CASUALTY INS. CO. —267 S. W. (2d) 760.

Eastern Section. January 6, 1954.

Petition for Certiorari denied by Supreme Court, April 16, 1954.

Burnet Sizer, of Chattanooga, for Wm. R. Ferguson, admr.

Coffey, Durand & Coffey, of Chattanooga, for Postal Ins. Co.

HALE, J.   W. P. Ferguson, the intestate, had a limited accident insurance policy with the appellee, wherein among other things it provided for death benefits in the sum of $500 if such accidental death was caused:

"By the burning of a church, school building, store, theatre, municipal administration building, office building or library, while the insured is therein and provided the Insured is therein at the beginning of the fire and is burned by such fire, or suffocated by the smoke therefrom, but this cause shall not cover the Insured while acting as a watchman, policeman, or a volunteer or paid fireman." The annual premium was $3.65.

On January 1st, 1952, and while the policy was in effect, the intestate-insured met his death from fire or suffocation in the residence of his son-in-law, Mr. A. C. Moore. At the beginning of the fire he was in the room where it originated and met his death. This was a sun room and was used as a combination living room, library and music room. In it were book shelves and a book case, containing an encyclopedia and other books, including those relating to Mr. Moore's work as Director of Athletics for the University of Chattanooga. Some of the school books of the children and a Bible were kept in this room which was equipped with a radio and combination victrola. It was a multipurpose room in a residence.

The rights and liabilities of the parties turn on this question: Was this a *library* within the meaning of the quoted insuring clause?

The Chancellor held it was not. Complainant has appealed and assigns error to this holding.

It is conceded this was a Missouri contract and controlled by the laws of that State.

Learned counsel for appellant argues that "library"

includes the library of a private home; that if the insurer intended to limit liability to a *public* library the policy should have so stated; hence there is an ambiguity which must be resolved in favor of the insured. If the premises be granted the conclusion is inevitable.

As was said in the Missouri Court of Appeals case of Prichard v. National Protective Insurance Co., 240 Mo. App. 187, 200 S. W. (2d) 540, at page 544:

"It is, therefore, well established that where the meaning of a policy provision is doubtful or suscep- tible of different constructions, the policy should be construed strictly against the insurer and liberally in favor of the insured."

The insuring clause in that case was almost identical with that in this case. Liability turned upon whether the fire was in an "office building". The building in question was owned by a bank which occupied the entire ground floor. The second floor was divided into seven rooms, numbered from 1 to 7 inclusive. Rooms 1 and 2 were used as offices, while rooms 3 to 6 were used as living quarters (being equipped with kitchenettes) while room 7 was a common toilet for use of all tenants on this floor. The insured occupied room 2 and was using it as her office at the time she met her death in a fire which destroyed the building. It was held this was an "office building" and a recovery on the policy was sustained. Upon the theory that the language used created an ambiguity which should be resolved in favor of the insured.

However, without applying the rule of "dominant use", the opinion seems to recognize it as being sound in that there was discussed the case of Dunn v. National Casualty Co., 255 App. Div. 52, 5 N. Y. S. (2d) 699, 700.

In that case the insuring clause was similar to that in the present case. The insured was an enrollee at a CCC camp which had a building used primarily for recreation. He was killed by a fire therein. In discussing the question of liability the New York Court said:

"Plaintiff contends that the building was a church because it was used for religious services approximately once every two weeks when the district chaplain preached to the members of the corps enrolled in the camp; that it was a theatre because it had a stage therein and, at intervals on the average of twice a month, theatrical performances were given and, from time to time, basketball games and boxing matches were held therein, all without any admission fee and for the entertainment of the members of the corps and their guests; and finally, that it was a school because, as part of the camp program, classes were held there from time to time, in which the members of the corps were given instruction in certain handicrafts, including leathercraft, hook rug making and photography. In addition, the building was used for weekly meetings of members of the corps."

Then in holding the building was not within the insuring clause, it was said:

"Actually, it was a general building which could not more appropriately be designated than it is, namely, a "Recreation Building," adaptable for many temporary uses, but not dominated as to its character by any particular use. The fair import of the language of the policy, which, needless to say, contains a very narrow assumption of risk on the part of the defendant, is that it covers a building so dom-

inantly used as to be known and characterized as a 'church, theatre, library, school or municipal administration building.' ''

In the subsequent case of Spiller v. Washington National Insurance Co., 240 Mo. App. 226, 206 S. W. (2d) 581, 586, the same Missouri Court recognized and applied the ''dominant use'' rule in defining ''office building''. This building had two floors, the first of which was used as a saloon, in connection with which there was used a small room as the proprietor's office. The upstairs was a ''lodge room'' used by various fraternal organizations, in connection with which they collected dues, kept records, regalia, etc. The insured was a porter in the saloon and lost his life in a fire in this building. The insuring clause covered loss of life by fire or suffocation in (among others) an ''office building''. In the lower court there was a verdict against the insurer. On appeal it was said:

''In fact, no part of the premises on the second floor of the building was designed for office purposes. * * * The use to which it was put would be an important element in determining whether the building was an office building. We are unable to find any evidence that the *dominant use* of the building was that of an office building, if, in fact, it was so used by any person or organization.'' (Emphasis supplied.)

The judgment below was reversed.

In the present case the insured lost his life in a private dwelling. The use of this particular room as a library was merely incidental to the occupants of this dwelling and did not constitute the ''dominant use'' thereof.

If by a strained interpretation we could convert this room into a ''library'' within the sense of the policy,

then, by a parity of reasoning we could also make it a "school building" because the children did some of their studying therein, or convert it into an "office building" because Mr. Moore kept material therein which related to his official duties with the University of Chattanooga.

Under the authorities quoted we are constrained to affirm the decree with cost against appellant and surety.

Affirmed.