480 P.2d 745

James P. KNUCKLES, Plaintiff and Respondent,

v.

METROPOLITAN LIFE INSURANCE COMPANY, a corporation, Defendant and Appellant.

No. 12254.

Supreme Court of Utah.

Feb. 5, 1971.

---

**320**

Van Cott, Bagley, Cornwall & McCarthy, Roger H. Thompson, Leonard J. Lewis, Salt Lake City, for defendant and appellant.

Van Cott Bagley, Cornwall & McCarthy, Roger H. Thompson, Leonard J. Lewis, Salt Lake City, for appellant.

Robert H. Ruggeri, Moab, for respondent.

HENRIOD, Justice:

Appeal from a judgment of the trial court sitting without a jury, for benefits under an insurance policy because of loss of sight. Affirmed with costs to plaintiff, Knuckles.

Knuckles, 31 at the time of his injury, was a resident of Bittle Lane, Utah, formerly of Dove Creek, Colorado. He had been employed as a miner since he left high school, at Slick Rock, Colorado, for Climax Uranium and at the time of injury for Texas Gulf Sulphur at its Kane Creek mine at Moab, Utah.

On what appears to have been supported by competent, admissible evidence, the court made findings to the effect that while working at the Texas Gulf mine, with good vision and full use of his right eye, needing no glasses, and while both eyes were normal, Knuckles suffered an injury to his right eye when struck by a foreign object; that he reported for medical treatment and submitted to medication and five surgeries to restore and/or improve "the vision he lost," and that no further surgery or medi-

cation would be of any use to further improve or restore his vision; that without the use of a special contact lens, he has lost the practical use of his eye, without which he can distinguish only between light and dark and see gross objects at close distance, cannot see to drive a car, watch television, shop, cook, watch a ball game, fish, hike or otherwise attend to his many needs or enjoy the normal and ordinary pleasures of life; that he says he cannot wear contact lens prescribed for him at his work in the mine because of dust, and that the lens are irritating and uncomfortable while not working; that he complained of this to his oculist on three occasions and received medication; that there was medical testimony that some individuals cannot use such lenses under any circumstances, and some testimony which the court found was the fact that Knuckles' lens was too large, illfitting and defective, which difficulty could be corrected; (and the court further found and held that such inability to use the lens was immaterial to the disposition of the case).

Although not included in the written findings of the court abstracted above it is only fair to state that the record reflects that with the use of two types of lenses, plaintiff could enjoy more or less normal or at least substantially improved vision, with the reserved incapacity for use in his work at the mine and the possible discomfiture otherwise.

For the purpose of this litigation, the parties have stipulated that there was loss of vision, and that the issues here are: 1) Did the plaintiff suffer "total and irrecoverable loss of the sight of one eye" within the meaning of the policy and the applicable law, and 2) Does the fact that the plaintiff's eyesight can be substantially improved by artificial lenses defeat recovery under all the circumstances of this case?

We cannot use the convenient rule in this case of affirming the trial court if its conclusion is supported by evidence viewed in a light favorable thereto. That simply would beg the question, since the stipulation assumes that if the vision has been lost, it could be enervated somehow by some organic or inorganic device or mechanism such as an eye transplant or by the use of contact lenses, glasses, etc.

This court is not the first that has found itself somewhat impaled on the horns of a dilemma, so to speak, in the interpretation of words like "total and irrecoverable loss" of sight, or "entire loss" of or "loss of entire" or simply "total loss" of eyesight. Defendant says the language is clear and certain, as does the plaintiff, who interprets it antithetically. Defendant says if one gone blind can be made to see by artificial means, his sight is not totally gone and has been recaptured, and that is what the language means. The plaintiff says not so, because once something has gone it is gone and cannot be recovered,—such as natural

teeth once gone are nonetheless gone though dentures may serve one better and without the hazard of cavities.

One good answer to the insurance company's urgence that artificial lenses prevent compensability under the policy might be that 1) in virtue of the irreconcilability of the cases that have interpreted such language over a long period of time, a few words modifying "total and irrecoverable" loss easily could have clarified and eliminated this troublesome case, such as "not including vision accomplished by artificial means." Another answer might be found in the wording of the policy itself, where it provides benefits for "Death or *Dismemberment*," defining dismemberment as loss of hands or feet *by severance*,—then lumps loss of eyesight as an included loss under the same dismemberment title and clause. Counsel for defendant concedes that the loss of a hand would be compensable, though a prosthetic might serve as well or conceivably better. Counsel distinguishes this situation from loss of sight by the words modifying it.

It would seem that it would not be unreasonable to conclude that the purpose of the insurance was to compensate for a hand or a foot *or a sight once lost*,—albeit the sight, like the hand, artificially may be made serviceable. Some people might interpret the language of the dismemberment clause that

way,—and they that did surely would not expect, as the defendant contends in argument, that after suffering blindness through accident, he would have to seek out surgery and medication. If he must do this, his costs, of course, may be twice the face amount of the policy at present-day medical prices,—before he would be entitled to any benefits under the policy. We believe that once the sight is completely destroyed, as was the case here, a person should not be required, at his own expense, to test the possibility of recovering his sight any more than the person, who in the same paragraph of the policy would not be required to do if he lost his hand or foot. We cannot follow the analogy of the defendant in pointing out the noncompensability of a broken hand, and we do not believe the words modifying loss of sight make such analogy acceptable.

The cases involving the matter here are in confusion.[1] It is conceded that the decisions numerically favor the defendant in similar situations, but the irreconcilability of authority is pointed up in two cases. In the one favoring defendant, Sextet Local Mutual Aid Ass'n. v. Covington, 15 S.W.2d 614 (Tex.Com.App.1929), where a policy covered permanent loss of an eye by removal, the court, in asserting total blindness was not covered unless the eyeball actually was removed, said that to hold otherwise "would be making a contract for the parties

---

1. See 87 A.L.R.2d 484, et seq.

which they did not see fit to make for themselves." On the other hand, in Benson v. Grand Lodge, Tenn. Ch. A., 54 S.W. 132, where loss of sight was covered, and it was claimed, as here, that lenses would recover some sight, the court said that "To hold that the parties have in contemplation the use of lenses would be to add to the contract a term that is not in it."

No useful purpose would be served in canvassing the numerous cases having such divergences of opinion. It seems to us that there is considerable merit to both of the antithetical interpretations of the language, subject of this case, not only by the parties here, but by the decisions. We think that the ease with which a policy could cover this situation with so few words, lends some substance to the concept that in case of the interpretation of language that obviously has two schools of thought, as reflected in the cases, the policy here should be construed strictly against its maker, the insurance company.

Although counsel for defendant, with considerable merit, urges that cases involving accidents under Workmens Compensation legislation are inapropos here, we have difficulty in ignoring those cases having to do with compensability for "total blindness,"[2] or in finding any substantial difference in meaning of those words and "total and unrecoverable loss of sight,"—

except by way of unwarranted semantics. We certainly are in no logical position to adopt different reasoning about a very similar situation as we have here, simply because the blindness was total in the legislation case as it is in the policy case, or because the identical case is covered by legislation, or by an insurance policy, or often by both, or because our reasoning was incident to the affirmance of an award by an industrial commission instead of a court. In Western Contracting Corp. v. Industrial Commission,[3] a case, which, had it been tried to a court, would seem to have been almost on all fours with that here, we unanimously said that "Our statute seems to be among the most favorable to allowing a complete award for total blindness in one eye even though substantial restoration of eyesight could be effected by the use of an optical lens." We are not unmindful that a good argument can be made to the effect the interpretation of a statute may or should not be dispositive of cases involving similar language in private contracts, but under the facts of this particular case we feel constrained to believe and we hold that a reasonable interpretation of the language of the policy here warrants recovery under its terms and an affirmance of the trial court's conclusion.

CALLISTER, C. J., and TUCKETT, ELLETT and CROCKETT, JJ., concur.

---

2. Title 35–1–66, Utah Code Annotated, as amended.

3. 15 Utah 2d 208, 390 P.2d 125 (1964).