**Peter ADAMS, Plaintiff-Respondent,**

v.

**COVENANT SECURITY INSURANCE COMPANY, now known as Twentieth Century Casualty Company, Defendant-Appellant.**

No. 33921.

St. Louis Court of Appeals, Missouri.

March 23, 1971.

Gray & Friedman, St. Louis, for plaintiff-respondent.

Rosenberg, Weiss, Goffstein & Kraus, St. Louis, for defendant-appellant.

CLEMENS, Commissioner.

Under what circumstances can it be said one automobile "replaces" another? The question arises under a public liability automobile insurance policy covering a specified automobile but extending coverage to a newly acquired automobile that "replaces" the specified automobile. Plaintiff contends this covered a new automobile used for the same purposes as the old automobile, even though the old one was still operable and had been retained by the insured solely for the purpose of sale. Conversely, the defendant contends the new automobile was not covered because tl_e old automobile was operable and still in the insured's possession. Our decision must resolve these conflicting interpretations.

Plaintiff is a judgment creditor of the insured, Oscar W. Wall. Plaintiff's underlying judgment against the insured arose from the death of plaintiff's wife, caused by Wall's negligent operation of a 1960 Ford, the alleged replacement automobile. Plaintiff's judgment against Wall being unpaid he sued defendant contending its public liability policy obligated it to pay his judgment. In the trial court defendant contended Wall's 1960 Ford had not "replaced" the 1956 Ford automobile specified in its policy and thus was not covered by the newly-acquired-automobile clause. The trial court rejected this defense and gave plaintiff a $5,000 judgment from which defendant has appealed. We affirm.

Plaintiff's case against the defendant-insurer was tried on stipuluated facts and the testimony of Oscar Wall, defendant's insured. On October 30, 1963 defendant issued a public liability policy to Oscar Wall covering his 1956 Ford. Five days later Wall bought a 1960 Ford, the one he drove in the fatal accident of November 9, 1963. The policy provided for coverage of a new-

ly acquired automobile defined as *"an automobile,* ownership of which is acquired by the named insured who is the owner of the described automobile, if the named insured notifies the company within thirty (30) days following the date of its delivery to him, and *if* either *it replaces an automobile described in this policy * * *"* (Our emphasis.) The parties tacitly agreed the 1960 Ford was covered by defendant's policy if it "replaced" the 1956 Ford. We relate the undisputed facts about this.

Mr. Wall used the originally insured 1956 Ford "for everyday use." On the day he bought the 1960 Ford he decided to sell the 1956 Ford. He parked it in his backyard and put "For Sale" signs on it; there it stayed and he never drove it again. From the moment Mr. Wall bought the 1960 Ford he used it for the same purposes for which he had used the 1956 Ford. To restate the issue, did the 1960 Ford "replace" the 1956 Ford?

"It is true that it is the court's duty to interpret insurance contracts and enforce them as they are written and not to remake them. (citations) On the other hand, an insurance policy being a contract designed to furnish protection will, if reasonably possible, be interpreted so as to accomplish that object and not to defeat it, and, if terms of the contract are susceptible of two possible interpretations and there is room for construction, the provisions limiting the coverage of the policy, will be construed most strongly against the insurer." Brugioni v. Maryland Casualty Company, Mo., 382 S.W.2d 707 [2–4]. Moreover, the defendant's policy declares it shall comply with the provisions of the Motor Vehicle Safety Responsibility Law [Ch. 303, RSMo., 1969, V.A.M.S.]. "The provisions of that act are indicative of the public policy of this state to assure financial remuneration to the extent and under the conditions therein provided for damages sustained through the negligent operation of motor vehicles upon the public highways of this state * * *" Winterton v. Van Zandt, Mo., 351 S.W.2d 696 [1]. It is clear there-

fore that public policy requires that this policy be liberally construed to include within its coverage any automobile that can reasonably be said to have replaced the 1956 Ford, the automobile originally covered. Winterton v. Van Zandt, supra, [2]; City of St. Louis v. Carpenter, Mo., 341 S.W.2d 786 [2].

■ The word "replace" is not ambiguous. It means "to take the place of; to serve as a substitute for or successor of." Webster's Third New International Dictionary. Nonetheless the word "replace" does have a flexible meaning, depending on the sense in which it is used. (Compare use of the word "permission" in Winterton v. Van Zandt, supra, [17].) The test of the meaning of non-technical words in an insurance policy is not merely the meaning implied to them by the insurance experts who drafted the policy; instead, courts are more concerned with the meaning that would ordinarily be understood by the layman who bought and paid for the policy. Greer v. Zurich Insurance Company, Mo., 441 S.W.2d 15 [12]; Hammontree v. Central Mutual Insurance Co., Mo.App., 385 S.W.2d 661 [3–6].

■ In the light of these principles we look again to the facts before us. When the insured bought the 1960 Ford he ceased all use of the 1956 Ford; he parked it in his backyard, marked it for sale and never used it again. Instead, he used only the 1960 Ford—for the same purposes he had used the older car. This conduct evidenced a clear intent by the insured to replace the old car with the new one. Applying the quoted definition of "replace" and the cited opinions requiring liberal interpretation in favor of the insured and the public interest, we find the insured could reasonably have determined from the existing circumstances and the words of defendant's policy that the 1960 Ford was a newly acquired automobile that had replaced the 1956 Ford described in the policy. The trial court correctly interpreted the policy and properly gave plaintiff judgment against the defendant insurer.

In reaching this conclusion we have not overlooked arguments raised by the defendant insurer. It relies on an interpretation sometimes applied by the courts of other states and mentioned, but not applied, in Beck Motors, Inc. v. Federal Mutual Insurance Co., Mo.App., 443 S.W.2d 200. By that interpretation some courts say a newly acquired automobile replaces the automobile described in the policy only when the originally insured vehicle has become inoperable or has been disposed of. Certainly either of those two facts is strong evidence of an intent to replace, but we cannot say they are the only factors that can constitute a replacement. We reject that interpretation since it unduly restricts the definition of "replace" and does violence to the principle of liberal interpretation in favor of an insured. Although we mentioned that strict interpretation in *Beck* we did not apply it, saying at 1. c. 205: "There may be other possibilities of treatment which would establish that the vehicle has been replaced." We find those "other possibilities" here.

If further reason be needed for saying *Beck* does not aid defendant here we point out that *Beck* denied there was a replacement vehicle where the insured kept and interchangeably operated both the old and the new automobiles. *Beck* must be read in the light of its own facts; as such it does not resolve the issue now before us. State ex rel. Lashly v. Becker, 290 Mo. 560, 235 S.W. 1017 [12]; Dennis v. Jenkins, Mo. App., 422 S.W.2d 393 [6].

Defendant argues that "replacement" coverage must be limited to instances where the original automobile has been disposed of or is inoperable—this "to make sure that the company does not insure two or more automobiles for one premium." No question of double coverage is before us. But if the defendant wanted to so limit its replacement coverage the way to do it was to use a policy provision so defining a replacement automobile. Allstate Insurance Co. v. Hartford Accident & Indemnity Co., Mo.App., 311 S.W.2d 41 [7-9]; State ex rel. Mills Lumber Co. v. Trimble, 327 Mo. 899, 39 S.W.2d 355 [5].

The only opinion cited by defendant in its brief is the *Beck* case. The two cited text references in defendant's brief are not authoritative in themselves but we have read the cases cited therein, all from other states. Those cases reveal divergent theories about replacement vehicles in innumerable factual situations, none like that before us. Those opinions, pro and con, are not binding on us and we believe our interpretation of defendant's policy provision on replacement vehicles is consistent with the principles of insurance law long established by Missouri courts.

Judgment affirmed.

PER CURIAM.

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, judgment is affirmed.

BRADY, P. J., and DOWD and WOLFE, JJ., concur.