**James R. CRIM, Respondent,**

v.

**The NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY, Appellant.**

**No. 61899.**

Supreme Court of Missouri,
En Banc.

Sept. 9, 1980.

Rehearing Denied Oct. 15, 1980.

Guy Magruder, David M. Harding, Robert F. Redmond, III, Kansas City, for appellant.

C. Michael Fitzgerald, Warrensburg, for respondent.

ROBERT R. WELBORN, Special Judge.

Action to recover benefits payable for loss of sight under group policy of life, accident and health insurance. On stipulated facts, trial court found in favor of insured. Insurer appealed to the Missouri Court of Appeals, Western District, which, in four to three decision, affirmed judgment. The Court of Appeals transferred the case to this Court.

James R. Crim was covered by a group policy of life, accident and health insurance issued by The National Life and Accident Insurance Company, a Tennessee corporation. Accident coverage included benefit of one half (here $5,000) the principal policy sum for accidental bodily injuries resulting in the loss of "sight of one eye." "With respect to eyes, 'loss' means the entire and irrecoverable loss of sight."

On September 29, 1975, Crim received an accidental injury to his right eye which required subsequent surgical removal of a traumatic cataract and of the prolapsed iris, with repair of the extensive corneal laceration and perforation. The left eye was unaffected by the accident.

Following the surgery, the unaided visual acuity of the insured was: Right Eye–2/200; Left Eye–20/20. He was provided a soft contact lens for the right eye. Wearing the corrective lens, the visual acuity of the insured was: Right Eye–20/25–1; Left Eye–20/20 (No Rx). Without the contact lens, depth perception is absent; with the lens, it is essentially normal. Neither additional surgery nor natural repair would restore prior normal vision of the right eye.

The question posed is whether or not the insured sustained, in these circumstances, "irrecoverable loss of sight" of his right eye. ("Entire * * * loss" is not in issue.) The trial court entered a general judgment for plaintiff.

Appellant's basic contention is that the insured did recover the sight in his right eye and therefore he has not suffered a loss within the clear and unambiguous language of the policy. Respondent contends that "irrecoverable loss of sight" does not entail consideration of correction of lost eyesight by the use of artificial lens. His position is that the policy language is ambiguous and therefore should be construed favorably to him.

Courts in other jurisdictions have found the language in question clear and unambiguous. In *Home Life Ins. Co. of New York v. Stewart*, 114 F.2d 516 (10th Cir. 1940), the language was involved in the case of an insured with 20/400 vision in both eyes, correctable to normal with artificial lenses. In finding for the insurer, the court stated (114 F.2d 518 [3]):

"Glasses are worn by a substantial proportion of people of all ages. Many of them have very little vision in the natural eye, but with the use of glasses their vision is substantially normal for all practical purposes. They pursue their businesses and professions with success. They meet in competition those with normal vision in the natural eye, and they are not seriously handicapped. It cannot be said that they have suffered the irrecoverable loss of sight. Here it is stipulated that for the purpose of this case, the insured has normal vision when he wears glasses. A court cannot say in a single judicial breath that he has suffered the irrecoverable loss of his sight within the meaning of the policy and at the same time that he has normal vision. The two are so diametrically in conflict that they cannot be brought into parallelism. The provision in the contract embraces the loss of sight by atrophy of the optic nerve or in some other manner which is irrecoverable, but it cannot be reasonably construed to cover a case where sight was lost but through surgery and the use of glasses normal vision is again enjoyed."

In *Equitable Life Assurance Society of the United States v. Short*, 332 N.E.2d 273 (Ind.App.1975), the court said:

"We hold that the word 'irrecoverable' as used in the instant contract is *not* ambiguous. The root word 'recover' has a well understood meaning, i. e., to regain, put back to a former state, or recapture. We believe the word 'irrecoverable' is commonly understood to mean *not* able to regain, et cetera. This, we feel is the plain and ordinary meaning properly assigned to the term presently in dispute." (Id. at p. 277[6])

See also *Wallace v. Insurance Company of North America*, 415 F.2d 542 (Sixth Cir. 1969); *Smith v. Great American Life Insurance Company*, 125 Ga.App. 587, 188 S.E.2d 439 (1972).

Respondent counters with cases reaching a contrary result. His principal reliance is upon *Knuckles v. Metropolitan Life Ins. Co.*, 25 Utah 2d 319, 480 P.2d 745 (1971). In that case the court said:

"It seems to us that there is considerable merit to both of the antithetical interpretations of the language, subject of this case, not only by the parties here, but by the decisions. We think that the ease with which a policy could cover this situation with so few words, lends some substance to the concept that in case of the interpretation of language that obviously has two schools of thought, as reflected in the cases, the policy here should be construed strictly against its maker, the insurance company." 480 P.2d 748.

The court also took note of the interpretation of the term "total blindness" for purposes of workmen's compensation awards, noting that an award for total blindness had been allowed "even though substantial restoration of eyesight could be effected by the use of an optical lens." *Western Contracting Corp. v. Industrial Com'n*, 15 Utah 2d 208, 390 P.2d 125, 127[1] (1964).

In *Winegarden v. Peninsular Life Ins. Co.*, 363 So.2d 1172 (Fla.App.1978), the court found policies insuring against loss of sight ambiguous because they failed to state that "the measure of any such loss will be applied to *corrected* vision, as opposed to *uncorrected* vision." 363 So.2d 1173[3]. The court resolved the ambiguity in favor of the insured.

Appellant has also cited Texas cases in support of its position: *Southland Life Ins. Co. v. Dunn*, 71 S.W.2d 1103 (Tex.Civ.App. 1934); *Reliable Life Insurance Company v. Steptoe*, 471 S.W.2d 430 (Tex.Civ.App.1971). Those cases do support appellant's position, although a more recent decision of another panel of the Court of Civil Appeals expresses approval of the *Knuckles* holding. *Boone v. United Founders Life Ins. Co.*, 565 S.W.2d 380, 382–383[2] (Tex.Civ.App.1978).

The logic of the holdings that vision which has been restored by the use of artificial lenses has not been irrecoverably lost is compelling. It is common knowledge that such devices are frequently employed in order to avoid loss of sight. To say that one whose sight has been so restored has lost his sight ignores reality.

■ The fact that vision might be recovered through medical treatment or naturally does not exclude the fact that it may also be recovered by mechanical or artificial means. The determinative term in the language here in question is the word "irrecoverable." That recovery may come about by more than one means does not make that term ambiguous. The fact that a word or phrase may be accorded a flexible meaning does not make it ambiguous. *Winterton v. Van Zandt*, 351 S.W.2d 696, 700[1, 2] (Mo. 1961); *Adams v. Covenant Security Insurance Company*, 465 S.W.2d 32, 34[1] (Mo. App.1971).

■ The term "irrecoverable loss of sight" has a plain, easily understood meaning. Webster's Third New International Dictionary defines "irrecoverable" as "not capable of being recovered, regained, remedied or rectified." The synonymous cross reference is: "IRREPARABLE."

Appellant's contention that the language in question is clear and unambiguous and must be given its ordinary meaning is meritorious.

■ The assertion of a contrary position by respondent does not make the language ambiguous. *Pierce v. Business Men's Assurance Co. of America*, 333 S.W.2d 97, 100[2–4] (Mo.1960); *J. E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264[5–8] (Mo.banc 1973).

Respondent relies heavily upon *Knuckles.* In *Knuckles*, the court pointed to " * * * the irreconcilability of the cases that have interpreted such language over a long period of time * * * " and concluded that the insurer could have clarified the language by addition of such language as " 'not including vision accomplished by artificial means.' " *Knuckles* describes the cases involving the question as "in confusion." However, it cites no case involving the language before it in which the language had been found ambiguous. *Knuckles* makes general reference to the annotation at 87 A.L.R.2d 481 (1963): "Fracture or loss of member, or loss of sight, contemplated by accident policy or provision insuring against specific injury." In selecting therefrom two cases as evidence of the "irreconcilability of authority," the court cited *Sextet Local Mutual Aid Ass'n v. Covington*, 15 S.W.2d 614 (Tex.Civ.App.1929), as favorable to the contention of the insurer. That case involved a policy which provided benefit only upon removal of the eyeball. Although the court found that language unambiguous, its relevance to consideration of the language actually involved in *Knuckles* is tenuous. As a contrary holding, *Knuckles* cites *Benson v. Grand Lodge*, 54 S.W. 132 (Tenn.Ch.App.1899), in which under a policy insuring against total blindness, the court held that improvement of vision by eyeglasses was not contemplated by the policy. 54 S.W. 136. Although the language with respect to eyeglasses was dictum, the case being decided on the grounds that plaintiff's evidence failed to prove his loss of sight, the language there in question was not that of the policy in *Knuckles.*

As above noted, *Knuckles* also relied upon the meaning of "total blindness" under workmen's compensation law. Respondent considers that reasoning significant because he would rely upon *Graf v. National Steel Products Co.*, 225 Mo.App. 702, 38 S.W.2d 518 (1931), a workmen's compensation case. Graf suffered an eye injury in an industrial accident which resulted in a 94.6% loss of visual efficiency of the affected eye. The loss was reducible to 20.8% with the use of glasses but compensation was allowed based upon the 94.6% loss without glasses. In upholding the compensation award against the contention that the disability rating should have been related to loss of earning power, the court held that such was not the theory of the workmen's compensation law " * * * which is based upon disability due to the loss of a member or a part of a member or function and not upon diminution of earning power by reason of the loss of function." In view of the social welfare concerns of the workmen's compensation law, analogies from that field are of minimal value.

Analysis of *Knuckles* leads to the conclusion that the result reached in that case was unsound and unsupported by authority. Certainly, that decision does not require this court to conclude that the language in question is ambiguous. As Judge Otis remarked in *Orr v. Mutual Life Ins. Co. of New York*, 57 F.2d 901, 903[4] (D.C., W.D., Mo., 1932):

> "If we say that language becomes ambiguous because some one contends it is ambiguous or some other concludes it is ambiguous, we save ourselves much labor, but we have applied a test that scarcely will stand examination. Unless we can point out in language we are considering wherein it has a double meaning, we are not justified in saying it is ambiguous, however many learned judges and unlearned laymen have voted 'yes' upon the question, 'Is it ambiguous?' "

*Winegarden*, not cited by appellant, is unconvincing on the issue of ambiguity. The court was considering two policies covering loss of sight, one of which did not include the definition of "irrecoverable loss of sight." The opinion takes no particular notice of that language.

Respondent argues that *Benson* is a decision of the highest court of Tennessee (*Benson* was affirmed orally by the Tennessee Supreme Court, 54 S.W. 138) and appellant, being a Tennessee corporation, is presumed to have issued its policy with knowledge of the construction placed upon the language by the Tennessee court. Without going into the soundness of the rule invoked by respondent, the simple answer is that the language of the policy in this case is not the language construed in *Benson*.

On the facts stipulated in this case, respondent has not sustained "irrecoverable loss of sight" of his right eye within the clear and unambiguous terms of the policy.

*Judgment reversed.*

SEILER, WELLIVER and HIGGINS, JJ., concur.

BARDGETT, C. J., dissents in separate dissenting opinion filed.

RENDLEN, J., dissents in separate dissenting opinion filed.

STOCKARD, Special Judge, dissents and concurs in separate dissenting opinions of BARDGETT, C. J., and RENDLEN, J.

DONNELLY and MORGAN, JJ., not sitting.

BARDGETT, Chief Justice, dissenting.

I respectfully dissent.

The facts as stated in the principal opinion make clear that the insured, Mr. Crim, has had the vision in his right eye reduced to seeing at two feet what is normally recognizable at two hundred feet. It is admitted that that condition satisfies the requirement of the policy which says "With respect to eyes, 'loss' means the entire and irrecoverable loss of sight." It is admittedly a permanent condition. The appellant insurance company seeks to avoid the payment of five thousand dollars as provided in the policy because the insured's vision can be and has been improved by the use of glasses (contact lenses).

The principal cases from around the nation are cited in the principal opinion, and they certainly support a view that the applicable provision in the policy is at least ambiguous. However, I do not regard it as being ambiguous. The real question presented is: "Was it the intent of the parties to this accidental injury insurance policy for which the plaintiff insured paid a premium, for the insurance company to pay the stipulated sum when the irrecoverable loss of the sight of an eye was sustained by accidental means, or was it the intent of the insured and the insurance company to allow the insurance company to avoid payment where some prosthetic device, but not the eye alone, would enable the insured to see again?"

One sees with his eyes, not with glasses, and the ability to see without glasses is an extremely valuable asset. It allows people to do many things that are difficult, if not impossible, if they are required to wear glasses, whether they be contacts or conventional glasses. There is no doubt in my mind that it was the purpose and intent of this policy that in return for the premium paid, the insurance company agreed to pay the stipulated sum to the insured if he were rendered sightless, in one or both eyes, to an extent which satisfied the provisions of the policy. In this case the provisions were satisfied and, in my opinion, the plaintiff ought to recover the entire sum.

Was the insured entitled to recover the $5,000.00 if he applied after the injury and before securing contact lenses? Whose financial obligation is it to pay for the glasses so as to relieve the insurance company of the obligation to pay? If, next week or next year, the contacts no longer function so as to restore the insured's vision, or his eyes cannot tolerate the lenses, will he then be allowed to recover?

I realize these issues are not presented in this case, but I regard them as significant factors in deciding the intent of the parties. Is it reasonable to assume that, had the insurance company salesman told the insured that he would not receive payment even though he lost the sight of an eye if glasses, at the insured's expense, would restore vision, the insured would have bought the policy?

The wording of this policy leads me to the firm conclusion that the insured intended to purchase and the insurance company intended to sell a policy that provided for the recovery by the insured of the stipulated sum on the loss of a human organ or the loss of the function of that organ without the aid of prosthetic devices, whether they be artificial limbs or eyeglasses.

I recognize that there is a reasonable basis for viewing the eye clause as ambiguous and therefore would concur in the dissenting opinion of Rendlen, J.

I therefore dissent and would affirm the circuit court judgment for plaintiff–respondent.

RENDLEN, Judge, dissenting.

In this case, we must determine the meaning and effect which should be given the word "irrecoverable." My position is articulated in the opinion filed by Judge Wasserstrom in the Western District of the Court of Appeals.

James R. Crim instituted suit on a group policy of life, accident and health insurance when a claim for benefits payable for loss of sight of one eye was denied. On stipulated facts, the trial court found respondent entitled to payment on his claim, entered judgment and the insurer appeals.

Applicable policy language provides a benefit payment of one–half the principal sum, in this case $5,000.00, for accidental loss of sight of one eye. The critical phrase in this regard states: "With respect to eyes, 'loss' means the entire and irrecoverable loss of sight." By its judgment, the trial court held that Crim had suffered the entire and irrecoverable loss of sight of one eye as the term was used in the policy and was entitled to payment of the benefits.

Appellant argues that the visual loss caused by the accident has in fact been recovered through use of a contact lens and that Crim's practical and functional sight has been restored to normalcy. Respondent

construes the word "irrecoverable" as meaning incapable of regeneration of the physical eye structure and function by natural means or medical procedure and would exclude recovery of sight by artificial means. On this premise, respondent contends the word "irrecoverable" is ambiguous and cites *Reese v. Preferred Risk Mut. Ins. Co.*, 457 S.W.2d 205 (Mo.App.1970), as authority for the familiar proposition that an ambiguous insuring agreement will be construed against the insurer.

Each of the opposing constructions placed by the parties upon the word "irrecoverable" is reasonable. Thus, appellant's interpretation has been accepted by *Home Life Ins. Co. of New York v. Stewart*, 114 F.2d 516 (10th Cir.1940); *J. W. Smith v. Great American Life Ins. Co.*, 125 Ga.App. 587, 188 S.E.2d 439 (1972); and *Wallace v. Insurance Co. of North America*, 415 F.2d 542 (6th Cir. 1969). However, that interpretation was rejected in *Knuckles v. Metropolitan Life Ins. Co.*, 25 Utah 2d 319, 480 P.2d 745 (1971). *See also Boone v. United Founders Life Ins. Co.*, 565 S.W.2d 380 (Tex.Civ.App.1978). Inasmuch as the term is reasonably capable of being understood in either of two possible senses, it is ambiguous. *Chamberlain v. Mutual Ben. Health & Acc. Ass'n*, 260 S.W.2d 790, 793 (Mo.App. 1953); *O'Brien v. Missouri Cities Water Co.*, 574 S.W.2d 13, 19 (Mo.App.1978). If appellant wanted to exclude coverage in a case such as this, it could have easily clarified the situation and eliminated any problem by modifying the word "irrecoverable" with the phrase "not including vision accomplished by artificial means." *Knuckles v. Metropolitan Life Ins. Co., supra*, 480 P.2d at 747.

Moreover, the conflict of judicial opinion on this subject brings into play the principle that differing court rulings concerning a term in an insurance policy strongly indicates the existence of a real ambiguity. *Jones v. Insurance Co. of North America*, 264 Or. 276, 504 P.2d 130 (banc 1972); *Federal Ins. Co. v. P. A. T. Homes, Inc.*, 113 Ariz. 136, 547 P.2d 1050 (banc 1976). In the case last cited the opinion holds:

"[W]here various jurisdictions reach different conclusions as to the meaning, intent, and effect of the language of an insurance contract ambiguity is established.

"'If Judges learned in the law can reach so diametrically conflicting conclusions as to what the language of the policy means, it is hard to see how it can be held as a matter of law that the language was so unambiguous that a layman would be bound by it.' *Alvis v. Mutual Benefit Health & Accident Association*, 210 Tenn. 198, 297 S.W.2d 643, 645–6 (1956)."

547 P.2d at 1052.

This result finds further support in the rule that an insurance policy should be construed to meet the reasonable expectation of the layman who purchased the policy. *Stafford v. Travelers Ins. Co.*, 530 S.W.2d 23 (Mo.App.1975); *Adams v. Covenant Sec. Ins. Co.*, 465 S.W.2d 32 (Mo.App.1971); *N. W. Electric Power Coop., Inc. v. American Motorists Ins. Co.*, 451 S.W.2d 356 (Mo.App. 1970).

The trial court reached the correct result, and its judgment should be affirmed.

I respectfully dissent.